[No. 13024.    In Bank. — April 2, 1890.]

H. P. STONE, RESPONDENT, v. JAMES HAMMELL, APPELLANT.

<table>
<tr><td>83</td><td>547</td></tr>
<tr><td>133</td><td>579</td></tr>
</table>

PRINCIPAL AND SURETY — REIMBURSEMENT OF SURETY. — The general rule is, that a surety can recover of the principal only the amount or value which the surety has actually paid.

ID. — EXTINGUISHMENT OF DEBT BY NOTE OF SURETY. — A surety cannot claim reimbursement from the principal on account merely of a note given by the surety, unless such note has operated to extinguish the debt of the principal to the original creditor.

ID. — NOTE TO CO-SURETY FOR CONTRIBUTION — OUT-LAWED DEBT. — A note given by one surety, by way of contribution to a co-surety who has satisfied the principal debt, even if accepted as payment by the co-surety, cannot confer a right of action against the principal, if the liability of the principal to reimburse the co-surety for his advances is barred by the statute of limitations.

ID. — STATUTE OF LIMITATIONS — ABSENCE OF SURETY FROM STATE — PAYMENT TO CO-SURETY — LIABILITY OF PRINCIPAL. — The liability of the principal to reimburse a surety for payment of the original debt, not being founded upon an instrument in writing, is barred in two years

from the date of such payment; and although the liability of another
surety, for contribution to his co-surety who has paid the debt, may be
kept alive by the absence of such other surety from the state, such ab-
sence does not extend the time within which an action may be brought
by him against the principal upon payment to his co-surety of his con-
tributive share of the principal debt.

APPEAL from a judgment of the Superior Court of
Santa Barbara County, and from an order denying a
new trial.

The facts are stated in the opinion of the court.

*S. W. Bouton,* and *Wells, Guthrie & Lee,* for Appellant.

*B. F. Thomas,* for Respondent.

McFARLAND, J. — After further consideration upon
argument on rehearing, we are satisfied that the judg-
ment in this case should be reversed.

The plaintiff with three other persons — Newell, Ham-
ilton, and Hayman — were sureties on a promissory note
made by defendant, Hammell, to one Byron Stevens for
three thousand dollars, dated July 1, 1877, and payable
one year after date. Plaintiff claims that one of said
sureties, Newell, paid on said note something over two
thousand dollars, and that plaintiff paid to Newell, as
his *pro rata* contributive share, one thousand dollars;
and this action was brought to recover said one thou-
sand dollars of defendant, the principal on the note.

There are a number of interesting questions in the
case, which, under the views which we take of it, need
not be determined. For instance, defendant contends
that he gave a mortgage to the sureties to secure them,
and that the mortgage should have been foreclosed, and
that the mortgaged property was sufficient in value to
satisfy the note; that defendant was discharged from
the liability sued on by a decree in insolvency; and that
the one thousand dollars was more than plaintiff's con-
tributive share. We will assume, however, that the

property was not held by way of mortgage, and was faithfully applied by Newell, as far as it would go, to the payment of the note; that the decree in insolvency did not include the liability sued on; and that one thousand dollars was the correct amount of plaintiff's contributive share.

It is not averred in the complaint or found by the court that the plaintiff, Stone, ever paid to his co-surety Newell any money or gave him any property in satisfaction of Newell's claim for contribution. The only averment on the subject is as follows: "That on the 1st of March, 1884, this plaintiff, in full satisfaction of the amount of money which he should contribute to said P. N. Newell for his aforesaid payments on the aforesaid note, made, executed, and delivered to said P. N. Newell his promissory notes in the sum of one thousand dollars, whereupon the said P. N. Newell gave to plaintiff his receipt in full for plaintiff's liability to contribute to him for the aforesaid payments on said promissory note." This is not a very clear averment that Newell took the notes in absolute payment of his former claim; but we will assume it to be sufficient for that purpose. There is no averment that plaintiff ever paid the notes, or any part of either of them. It appears, from the findings, that they were payable two years after date, and would not mature until more than a year after this action was commenced. The court below held that the giving of these notes, and their acceptance as payment by Newell, constitutes a cause of action in favor of plaintiff against defendant. In this holding, under the facts in the case at bar, at least, the court, in our opinion, erred.

The general rule is, undoubtedly, that a surety can recover of the principal only the amount or value which the surety has actually paid. If he has paid in depreciated bank notes taken at par, he can recover only the actual value of the bank notes so paid and received; if

he has paid in property, he can recover only the value
of the property; if he has compromised, he can recover
only what the compromise cost him. The rule is, that
he shall not be allowed to "speculate out of his princi-
pal." (Brandt on Surety and Guaranty, sec. 182, and
cases there cited; *Estate of Hill,* 67 Cal. 243.)

There is authority, however, and perhaps a preponder-
ance of authority, to the point that if a surety, by giving
his negotiable promissory note, satisfies the claim of the
creditor, and *extinguishes the debt of the principal to the
creditor,* he may recover from the principal the amount
of the debt, without showing that he has paid his prom-
issory note. (Brandt on Surety and Guaranty, sec. 181,
and cases cited.) But the authorities are not uniform
upon the subject. In Indiana and North Carolina, and
some other states, it is held that the surety cannot recover
of the principal until he has paid the money, and that
the giving of a note is not sufficient. (*Brisindine* v.
*Martin,* 1 Ired. 286; *Nowland* v. *Martin,* 1 Ired. 307;
*Romine* v. *Romine,* 59 Ind. 351, and cases there cited.)
Many of the cases hold that if the surety discharges the
debt by a negotiable note he can maintain an action
against the principal, while if he does so by means of a
bond or any non-negotiable instrument, he cannot, upon
the theory that a negotiable note is analogous to money,
—a distinction which is founded upon no apparent good
reason. (*Boulware* v. *Robinson,* 8 Tex. 327; 58 Am. Dec.
117; *Peters* v. *Barnhill,* 1 Hill (S. C.), 237.) The rule is
founded on the reason that if the surety, by giving his
own obligation, discharges the original debt of the princi-
pal, the latter is as much benefited as if he had discharged
it by actually paying the money; its weakness lies in the
possibility of the surety recovering the whole amount
of the principal, and never paying his own note, thus
violating the cardinal rule that the surety shall not
speculate out of the principal. But if we assume the
rule to be as first above stated, it is not so clearly com-

mendable as to deserve pushing further than adjudicated cases have already carried it; and in all cases to which our attention has been called, the rule has been enforced against the principal in favor only of the surety who has extinguished the debt to the original creditor. We have seen no case in which the rule has been applied to a surety who had *not* satisfied the original debt, but had only given his note to another surety who *had* satisfied it. Moreover, the reason of the rule — if it be held to be the rule — is, that the principal is benefited to the extent of the original debt or liability which has been extinguished by the new obligation of the surety; and the reason ceases when there is no such benefit. Now, in the case at bar, defendant was in no manner benefited by the notes given by plaintiff to Newell, nor was any debt or liability of defendant thereby extinguished; because at the time the notes were given there was no legal liability from the defendant to Newell, for the reason that any cause of action which the latter might have had against the defendant for moneys which he had paid to Byron Stevens had long been barred by the statute of limitations. The last payment made by Newell on the note to Stevens, as averred and found, was on January 10, 1881; and as his cause of action for the payments which he had made was not "founded on a written instrument," it was barred in two years, — that is, on January 10, 1883. (*Chipman* v. *Morrill*, 20 Cal. 136.) But plaintiff did not give his notes to Newell until March 1, 1884. At that time defendant was under no legal obligation to any one which plaintiff could discharge by giving said notes. The original note given to Stevens had itself been long since outlawed. Therefore by giving said notes plaintiff acquired no cause of action against the defendant herein.

We think, also, that the cause of action averred in the complaint would have been barred by the statute of limitations, which was pleaded by defendant, even though

plaintiff, on March 1, 1884, had actually paid Newell the one thousand dollars in money. Plaintiff seeks to avoid the running of the statute through the fact that within a month after the original note to Stevens matured he left the state, and resided out of the state for several years. His contention is, that as Newell's cause of action against him for contribution would not be barred while he remained out of the state, therefore his cause of action which he had against defendant, or which he proposed at some future time to have by paying his contributive share to Newell, would not be barred during his absence from the state, though such absence should be for fifty years. He contends that by returning at any time, and subjecting himself to Newell's claim and paying it, he could recover his part of it against defendant, although in the hands of Newell it had been outlawed for a quarter of a century. We do not think that the law of limitation of actions contemplates any such an anomaly. When a man leaves the state, the statute of limitations does not run during his absence as to any cause of action *against* him; but his absence does not prevent the statute from running as to any cause of action *in his favor.* At any time within two years after Newell had paid the original note plaintiff could have paid his contributive share to Newell and maintained an action for it against defendant. But he could not wait until the whole of Newell's cause of action against defendant was barred, and then revive one half of the claim by coming back years afterward and making a real or pretended payment of it to Newell. The whole claim was, as to defendant, dead; and the breath of life could not be blown into one half of it by any such legal hocus-pocus.

For the reasons above stated, the judgment and order appealed from are reversed, and the cause remanded for such further proceedings as respondent may be advised to take.

Fox, J., Sharpstein, J., and Paterson, J., concurred.

Beatty, C. J., concurring.— I concur.   A surety who pays the debt of his principal has an undoubted right to recover the amount paid.   But such is not the case here. The liability of the principal had been extinguished by the statute of limitations before any payment by the surety.   The absence of the plaintiff from the state had kept the claim alive as to him, though it was extinguished as to the defendant.   The plaintiff, therefore, did not pay the defendant's debt,— he merely paid his own debt.   By so doing he could not possibly acquire a right of action against the defendant.