## YULE v. BISHOP et al.[*]

### S. F. No. 1364; August 13, 1900.

#### 62 Pac. 68.

**Stockholder's Liability.**—Under Civil Code, Section 1473, providing that performance of an obligation by one on behalf of the party whose duty it was to perform it, and with his assent, if accepted by the creditor, extinguishes it, an indorser of a corporation's note, who paid the same and took an assignment thereof from the payee, was not entitled to maintain an action thereon, since the debt was extinguished, and hence he could not enforce the statutory liability of stockholders for such debt.

APPEAL from Superior Court, Alameda County.

Action by John Yule against Charles R. Bishop and others. From an order granting plaintiff a new trial defendants appeal. Reversed.

E. J. Pringle, E. J. Pringle, Jr., and Fitzgerald & Abbott for appellants; John Yule in pro. per.

HENSHAW, J.—This is an action by plaintiff to enforce the statutory liability of the stockholders for a debt of the corporation. Judgment passed for defendants. Plaintiff

---

[*]For subsequent opinion in bank, see 133 Cal. 574, 65 Pac. 1094.

33

moved for and obtained an order granting him a new trial and from that order defendants appeal. The complaint, so far as is necessary for the consideration of the questions here presented, shows that the Consolidated Piedmont Cable Company, a corporation, borrowed from the Oakland Bank of Savings, upon its corporate note, the sum of $10,000. Before delivery of the note, Mrs. Phebe Blair placed her name upon the back thereof as an accommodation indorser. In time Mrs. Blair was called upon to pay the note, and did so. Upon payment she took from the bank an assignment of the note, ''and all its rights and interest thereto, and all moneys due or to grow due thereon, and all rights of action which said bank had or held against the said Consolidated Piedmont Cable Company and against the stockholders of said corporation created or existing in favor of said bank by reason of said loan.'' Mrs. Blair in turn assigned and transferred to one Black the promissory note, and all rights and interest therein, and to all moneys due and' to grow due thereon. Black brought an action against the corporation, and recovered judgment against it for the amount so paid by Mrs. Blair, with interest. Thereafter Black and Mrs. Blair executed and delivered to the plaintiff an assignment of all their right, title, interest and estate in and to the judgment, to the note, and to any and all rights of action against the stockholders of the Consolidated Piedmont Cable Company, created or existing by reason of the loan made by the bank. Issue was joined upon these averments, and the court found, as matter of fact, that with the note the bank's right of action against stockholders had been assigned to Mrs. Blair. This finding of fact, being in plaintiff's favor, was, of course, not assailed by him upon his motion for a new trial; and therefore, so far as it may justly be considered a finding of fact, it is not open to question on this appeal. The court further found the assignment by Mrs. Blair to Black to have been as pleaded in the complaint and above set forth. It next quoted at length the written assignment made by Black and Mrs. Blair to this plaintiff, which in terms was an assignment of the judgment and of the promissory note, and found that neither Black nor Mrs. Blair had assigned to plaintiff any right of action against the stockholders of the corporation upon account of the debt. This last finding was challenged by plain-

tiff in his motion for a new trial, and is the one which here invites particular consideration.

Mrs. Blair being an accommodation indorser upon the note so far as the bank, the actual payee of the note, was concerned, she became charged with the duties and vested with the rights of an indorser: Civ. Code, sec. 3117. But, while this was her position with relation to the bank, as to the corporation she was a surety, and in the complaint it is properly charged that she "indorsed the note as surety" to enable the corporation to obtain the money from the bank. Her rights and remedies against the corporation and against its stockholders, then, are such as belong to a surety who has paid the debt and discharged the obligation of his principal. While the attack upon the so-called findings is directed in terms to the question of the sufficiency or insufficiency of the assignments to accomplish their intended purpose, the real question in controversy goes to the nature and extent of the rights of the surety under the indicated circumstances. Thus, while plaintiff pleads and the court finds that an assignment was made by the bank to Mrs. Blair of its rights under the note, and of its rights of action against the stockholders, if, under the law of the state, Mrs. Blair was entitled to such assignment, the court, in equity, would decree her to be vested with such rights, or, so far as might be necessary to her protection in the full enforcement of her claim against the corporation, would subrogate her to the bank. As equity would do this without any formal assignment by the bank, it follows that the so-called finding of fact declaring that the bank did assign the note, and did assign its rights of action against the stockholders, is in reality more of a conclusion of law—a statement of what the court believed to be the legal rights which attached to Mrs. Blair by reason of her suretyship and her payment of the debt of her principal. It is, then, as has been said, upon the question of the nature and extent of the rights of sureties under the indicated circumstances that counsel so widely differ. Upon the part of respondent it is insisted that, whether Mrs. Blair be regarded as an indorser or as a surety, equity countenances an assignment of the principal debt paid by the surety, and will keep it alive for all purposes necessary to her protection in the collection of her demand against the principal; that, being thus subrogated to the bank, she is clothed

with all its rights and remedies, and vested with the right to enforce all of the securities which the bank itself possessed; and that, therefore, as the right of action of a creditor of the corporation against the stockholders is, in its broad sense, a security for his debt, under subrogation and equitable assignment she was vested with the same right to prosecute actions for contribution against the stockholders which the bank itself had formerly enjoyed. As against this, appellants contend that, as Mrs. Blair was in law nothing more than a surety, upon the payment by her in full of the principal's obligation, ipso facto that obligation was extinguished (Civ. Code, sec. 1473); that whatever extinguishes the obligation of the corporation, as matter of absolute law, must extinguish the independent statutory liability of the stockholders for contribution upon account of such obligation; that, by the assignment of the extinguished obligation evidenced by the note, Mrs. Blair could acquire no right of action against the corporation or against its stockholders upon account of the original debt, but that upon her payment of the corporation debt a new liability sprang at once into existence—a liability upon the part of the corporation to reimburse her for what she had expended, including necessary costs and expenses (Civ. Code, sec. 2847), and the corresponding liability upon the part of the then stockholders of the corporation, extending for three years from the date of the payment by Mrs. Blair, to contribute in proportion to their holdings toward the reimbursement of Mrs. Blair, in the event that the corporation failed so to do.

That a surety paying the debt of the principal is entitled by equitable assignment or subrogation to the benefit of every security for the performance of the principal obligation, and to enforce every remedy which the creditor had against the principal, to the extent of reimbursing himself, is an elementary principle of equity, which finds expression in sections 2848 and 2849 of our Civil Code. But whether or not the principal debt, after payment by the surety, is kept alive, and will pass to him for enforcement, is a question that has much agitated the courts, and one upon which a great contrariety of opinion has been expressed. It would unduly extend this opinion to attempt to review even the leading cases bearing upon the different sides of this question. Suffice it to say that under the earlier English decisions it was

held that the original obligation was kept alive, and that the surety in equity had the right to compel an assignment of it to him, and to enforce it according to its tenor and terms. Later, by Lord Eldon in Copis v. Middleton, 1 Turn. & R. 220, and by Lord Brougham in Hodgson v. Shaw, 3 Mylne & K. 183, the contrary doctrine was laid down, and it was declared that "when a person pays off the bond in which he is co-obligator, or bound subsidiaries, he has at law an action against the principal for money paid to his use, and he can have nothing more." Still later the law as thus declared was changed by parliament (19 & 20 Vict., c. 97, sec. 5), and reversion thus made to the earlier rule. In this country the doctrine of Lord Brougham has not met with much approval, and the strong trend of the American decisions is in favor of the law as it now obtains in England: Bisp. Eq., 4th ed., p. 297; Orem v. Wrightson, 51 Md. 34, 34 Am. Rep. 286; Smith v. Rumsey, 33 Mich. 194; Lumpkin v. Mills, 4 Ga. 343; Bowen v. Hoskins, 45 Miss. 183, 7 Am. Rep. 728; The Tangier, 2 Low. 7, Fed. Cas. No. 13,744. In this state, as early as 1862, in the case of Chipman v. Morrill, 20 Cal. 130, it was decided, in effect, that by the surety's payment the principal obligation was extinguished, and that the action of the surety was upon the assumpsit which the law implies where a surety is compelled to advance money for his principal. That there might be no room for controversy, with the enactment of the code the question was laid at rest in this state by the declaration that the full performance of the obligation by any person on behalf of the principal, with his assent, if accepted by the creditor, extinguishes the obligation: Civ. Code, sec. 1473. In James v. Yaeger, 86 Cal. 187, 24 Pac. 1005, this court said: "By the payment to the payee the note became extinguished and ceased to be a binding obligation: Civ. Code, sec. 1473; Wright v. Mix, 76 Cal. 465, 18 Pac. 645. . . . . Having been paid, it became functus officio, and no action could be maintained upon it: Gordon v. Wansey, 21 Cal. 79." The same principle is enunciated in Stone v. Hammell, 83 Cal. 547, 17 Am. St. Rep. 272, 8 L. R. A. 425, 23 Pac. 703, and in Stanley v. McElrath, 86 Cal. 449, 10 L. R. A. 545, 25 Pac. 16. In this state, therefore, it seems to be well settled, both by the language of the code and by the decisions of this court under it, that full payment and performance by the surety extinguish the primary obligation;

that new rights and liabilities then arise—upon the part of the principal, to reimburse the surety for the moneys expended, with legal interest, though not according to the terms of the primary obligation, and upon the part of the surety, the right to an action in assumpsit upon the implied promise of the principal to make him whole. Since the principal obligation is thus extingushed, it cannot be with us, as it may be elsewhere, that the original obligation is kept alive, and passes to the surety by equitable assignment or subrogation. Redington v. Cornwell, 90 Cal. 49, 27 Pac. 40, is relied upon by respondent as being opposed to these views, but that was not the case of the payment of a debt by a surety. The debt of the corporation was paid by one of its stockholders, who in his complaint asked to be subrogated to the right of the original holder of the debt to enforce the stockholder's liability. He was himself a stockholder, and interested, therefore, in the preservation of the corporate property. He was not a mere volunteer. He was not a surety. But he had, by virtue of his relations to the corporation, the right to take up the note, and to hold it and the debt represented by it, and enforce contribution among his fellow-stockholders. Under the circumstances of that case, the debt was not extinguished, while by payment on the part of the surety it certainly is extinguished, or section 1473 of the Civil Code is without meaning. But, as the liability of the stockholder to contribution for the payment of a corporate debt presupposes the existence of such debt, it must necessarily follow that when the corporation debt is extinguished the statutory liability of the stockholders at once ceases. So that in the present case, as matter of law, the debt having been extinguished by the surety's payment, the liability of the stockholders upon that debt came to an end, and neither under the doctrine of equitable assignment nor of subrogation could it have been transferred as a live and subsisting obligation to Mrs. Blair; for, as has been said, upon the full performance by Mrs. Blair the old liability was extinguished, and a new liability sprang up against the corporation and its stockholders—a liability upon an implied contract to reimburse what had been expended, including necessary costs and expenses. It was a new debt of the corporation, having its creation in and at the time of the payment by Mrs. Blair, and concur-

rently with the creation of this new debt came into existence a new liability upon the part of the then stockholders of the corporation for their contributory share of the amount of the debt thus due to Mrs. Blair. This action was framed and commenced upon the theory of the continuing existence of the liability upon the part of the stockholders after the full discharge of the corporation obligation by Mrs. Blair. As matter of law, it has been said that this could not be. It follows, therefore, that the finding of fact here assailed by respondent, and which is in effect but a conclusion of law, is legally sound. The order granting a new trial is therefore reversed.

We concur: Temple, J.; McFarland, J.