[S. F. No. 1364. In Bank. — August 7, 1901.]

## JOHN YULE, Respondent, v. CHARLES R. BISHOP, et al., Appellants.

CORPORATIONS — LIABILITY OF STOCKHOLDERS — NOTE PAID BY ACCOMMO-
DATION INDORSER — SURETYSHIP — EXTINGUISHMENT OF NOTE — AS-
SIGNMENT. — Where a bank loaned money to a corporation, an
accommodation indorser of the note, though liable to the bank only
as an indorser, is a surety as to the corporation maker, and pay-
ment of the note by the surety extinguishes it as to the corporation
and its stockholders, and there can be no legal or equitable assign-
ment of or subrogation to the extinguished note. An assignment
thereof by the bank to the surety cannot create a cause of action
thereon against the corporation or its stockholders. [Harrison, J.,
and Van Dyke, J., dissenting.]

ID. — CAUSE OF ACTION FOR REIMBURSEMENT — ACCRUAL OF STOCKHOLDERS'
LIABILITY — STATUTE OF LIMITATIONS. — Immediately upon the pay-
ment of the note by the accommodation indorser, as surety for the
corporation, a new cause of action accrued immediately, in favor of
the indorser, against the corporation and those who were stock-
holders at that time, to reimburse the surety for the amount ex-
pended, including necessary costs and expenses; and the liability
of those stockholders for such reimbursement would not be barred
by the statute of limitations until three years after the date of the
payment.

APPEAL from an order of the Superior Court of Alameda County granting a new trial. W. E. Greene, Judge.

The facts are stated in the opinion of the court.

Edward J. Pringle, E. J. Pringle, Jr., and Fitzgerald & Abbott, for Appellants.

Upon payment of note by the accommodation indorser, as surety of the corporation, the only cause of action against the corporation was upon an *assumpsit* for reimbursement. (Civ. Code, sec. 2847; *Chipman* v. *Morrill*, 20 Cal. 130; *Stone* v. *Hammell*, 83 Cal. 551;[1] *Thomas* v. *Pacific Beach Co.*, 115 Cal. 136; 1 Parsons on Notes and Bills, 2d ed., p. 233; *Hunt* v. *Amidon*, 4 Hill, 349;[2] *Schleissman* v. *Kallenberg*, 72 Iowa, 338.[3]) The surety, though entitled by subrogation to collateral securities, is not entitled to be subrogated to the discharged debt. (*Ex-*

[1] 17 Am. St. Rep. 272.          [3] 2 Am. St. Rep. 247.
[2] 40 Am. Dec. 283.

*ecutors of Dennis* v. *Rider,* 2 McLean, 454; *McLean* v. *La Fayette Bank,* 3 McLean, 610; *United States* v. *Preston,* 4 Wash. C. C. 452; *Foster* v. *Trustees of Athenæum,* 3 Ala. 310; *Faires* v. *Cockerell,* 88 Tex. 428; *Gieseke* v. *Johnson,* 115 Ind. 308; Civ. Code, sec. 1473; *Stone* v. *Hammell,* 83 Cal. 551;[1] *James* v. *Yaeger,* 86 Cal. 187; *Stanley* v. *McElrath,* 86 Cal. 449; *Schleissman* v. *Kallenberg,* 72 Iowa, 338.[2])

John Yule, and John M. Poston, for Respondent.

Payment by the accommodation indorser only extinguished his liability, and left intact the cause of action against the primary obligors, and the indorser becomes equitably entitled to the debt. (Tiedeman on Commercial Paper, secs. 372, 376; *Madison Square Bank* v. *Pierce,* 137 N. Y. 444, 446;[3] *Terry* v. *Woods,* 6 Smedes & M. 139;[4] *Ellsworth* v. *Brewer,* 11 Pick. 315, 320; *Norton* v. *Downer,* 33 Vt. 26; *McCarty* v. *Roots,* 21 How. 432, 437; *Opp* v. *Ward,* 125 Ind. 241;[5] *Lumpkin* v. *Mills,* 4 Ga. 343.)

HENSHAW, J.— Upon the hearing of this case in Department Two, the following opinion was rendered:—

"This is an action by plaintiff to enforce the statutory liability of the stockholders for a debt of the corporation. Judgment passed for defendants; plaintiff moved for and obtained an order granting him a new trial, and from that order defendants appeal. The complaint, so far as is necessary for the consideration of the questions here presented, shows that the Consolidated Piedmont Cable Company, a corporation, borrowed from the Oakland Bank of Savings, upon its corporate note, the sum of ten thousand dollars. Before delivery of the note, Mrs. Phœbe Blair placed her name upon the back thereof as an accommodation indorser. In time, Mrs. Blair was called upon to pay the note, and did so. Upon payment, she took from the bank an assignment of the note, 'and all its rights and interest thereto, and all moneys due or to grow due thereon, and all rights of action which said bank had or held against the said Consolidated Piedmont Cable Company, and against the stockholders of said corporation, created or existing in favor of said bank by reason of said loan.' Mrs. Blair in turn assigned and transferred to one Black the promissory

---

[1] 17 Am. St. Rep. 272.　　　[4] 45 Am. Dec. 274.

[2] 2 Am. St. Rep. 247.　　　[5] 21 Am. St. Rep. 220.

[3] 33 Am. St. Rep. 751.

note and all rights and interest therein, and to all moneys due and to grow due thereon. Black brought an action against the corporation, and recovered judgment against it for the amount so paid by Mrs. Blair, with interest. Thereafter Black and Mrs. Blair executed and delivered to the plaintiff an assignment of all their right, title, interest, and estate in and to the judgment, to the note, and to any and all rights of action against the stockholders of the Consolidated Piedmont Cable Company, created or existing by reason of the loan made by the bank. Issue was joined upon these averments, and the court found, as matter of fact, that with the note the bank's right of action against the stockholders had been assigned to Mrs. Blair. This finding of fact, being in plaintiff's favor, was, of course, not assailed by him upon his motion for a new trial, and therefore, so far as it may justly be considered a finding of fact, it is not open to question on this appeal. The court further found the assignment by Mrs. Blair to Black to have been as pleaded in the complaint and above set forth. It next quoted at length the written assignment made by Black and Mrs. Blair to this plaintiff, which, in terms, was an assignment of the judgment and of the promissory note, and found that neither Black nor Mrs. Blair had assigned to plaintiff any right of action against the stockholders of the corporation upon account of the debt. This last finding was challenged by plaintiff in his motion for a new trial, and is the one which here invites particular consideration.

"Mrs. Blair being an accommodation indorser upon the note, so far as the bank, the actual payee of the note, was concerned, she became charged with the duties and vested with the rights of an indorser. (Civ. Code, sec. 3117.) But, while this was her position with relation to the bank, as to the corporation maker she was a surety, and in the complaint it is properly charged that she 'indorsed the note as surety,' to enable the corporation to obtain the money from the bank. Her rights and remedies against the corporation and against its stockholders, then, are such as belong to a surety who has paid the debt and discharged the obligation of his principal. While the attack upon the so-called findings is directed, in terms, to the question of the sufficiency or insufficiency of the assignments to accomplish their intended purpose, the real question in controversy goes to the nature and extent of the rights of the surety under the indicated circumstances. Thus while plaintiff pleads and the

court finds that an assignment was made by the bank to Mrs.
Blair of its rights under the note, and of its rights of action
against the stockholders, if, under the law of the state, Mrs.
Blair was entitled to such assignment, the court in equity
would decree her to be vested with such rights, or, so far as
might be necessary to her protection in the full enforcement
of her claim against the corporation, would subrogate her to
the bank.   As equity would do this without any formal assign-
ment by the bank, it follows that the so-called finding of fact
declaring that the bank did assign the note, and did assign its
rights of action against the stockholders, is in reality more of
a conclusion of law,—a statement of what the court believed to
be the legal rights which attached to Mrs. Blair by reason of
her suretyship and her payment of the debt of her principal.

" It is, then, as has been said, upon the question of the nature
and extent of the rights of sureties under the indicated circum-
stances that counsel so widely differ.   Upon the part of re-
spondent it is insisted that whether Mrs. Blair be regarded as
an indorser or as a surety, equity countenances an assignment
of the principal debt paid by the surety, and will keep it alive
for all purposes necessary to her protection in the collection of
her demand against the principal; that, being thus subrogated
to the bank, she is clothed with all its rights and remedies,
and vested with the right to enforce all of the securities which
the bank itself possessed; and that, therefore, as the right of
action of a creditor of the corporation against the stockholders
is in its broad sense a security for his debt, under subrogation
and equitable assignment she was vested with the same right
to prosecute actions for contribution against the stockholders
which the bank itself had formerly enjoyed.

" As against this, appellants contend that as Mrs. Blair was
in law nothing more than a surety, upon the payment by her
in full of the principal's obligation, *ipso facto* that obligation
was *extinguished* (Civ. Code, sec. 1473); that whatever extin-
guishes the obligation of the corporation, as matter of absolute
law must extinguish the independent statutory liability of the
stockholders for contribution upon account of such obligation;
that by the assignment of the extinguished obligation evidenced
by the note Mrs. Blair could acquire no right of action against
the corporation or against its stockholders upon account of the
original debt, but that upon her payment of the corporation

debt a new liability sprang at once into existence, — a liability upon the part of the corporation to reimburse her for what she had expended, including necessary costs and expenses (Civ. Code, sec. 2847), and the corresponding liability upon the part of the then stockholders of the corporation, extending for three years from the date of the payment by Mrs. Blair, to contribute in proportion to their holdings toward the reimbursement of Mrs. Blair, in the event that the corporation failed so to do. That a surety paying the debt of the principal is entitled by equitable assignment or subrogation to the benefit of every security for the performance of the principal obligation, and to enforce every remedy which the creditor had against the principal to the extent of reimbursing himself, is an elementary principle of equity which finds expression in sections 2848 and 2849 of our Civil Code. But, whether or not the principal debt, after payment by the surety, is kept alive and will pass to him for enforcement, is a question that has much agitated the courts, and one upon which a great contrariety of opinion has been expressed. It would unduly extend this opinion to attempt to review even the leading cases bearing upon the different sides of this question. Suffice it to say, that, under the earlier English decisions, it was held that the original obligation was kept alive, and that the surety, in equity, had the right to compel an assignment of it to him, and to enforce it according to its tenor and terms. Later, by Lord Eldon in *Copis* v. *Littleton*, 1 Turn. & R. 220, and by Lord Brougham in *Hodgson* v. *Shaw*, 3 Mylne & K. 183, the contrary doctrine was laid down, and it was declared that ' when a person pays off the bond in which he is co-obligor, or bound *subsidiaris*, he has at law an action against the principal for money paid to his use, and he can have nothing more.' Still later, the law as thus declared was changed by Parliament (19 & 20 Vict., c. 97, sec. 5), and reversion thus made to the earlier rule. In this country the doctrine of Lord Brougham has not met with much approval, and the strong trend of the American decisions is in favor of the law as it now obtains in England. (Bispham's Principles of Equity, 4th ed., p. 297; *Orem* v. *Wrightson*, 51 Md. 34;[1] *Smith* v. *Rumsey*, 33 Mich. 194; *Lumpkin* v. *Mills*, 4 Ga. 343; *Bowen* v. *Hoskins*, 45 Miss. 183;[2] *The Tangier*, 2 Low. 7.)

" In this state, as early as 1862, in the case of *Chipman* v.

---

[1] 34 Am. Rep. 286.          [2] 7 Am. Rep. 728.

*Morrill*, 20 Cal. 130, it was decided, in effect, that by the
surety's payment the principal obligation was extinguished,
and that the action of the surety was upon the *assumpsit* which
the law implies where a surety is compelled to advance money
for his principal. That there might be no room for contro-
versy, with the enactment of the code the question was laid at
rest in this state by the declaration that the full performance
of the obligation by any person on behalf of the principal
with his assent, if accepted by the creditor, extinguishes the
obligation. (Civ. Code, sec. 1473.) In *James* v. *Yaeger*, 86
Cal. 187, this court said: ' By the payment to the payee the
note became extinguished, and ceased to be a binding obliga-
tion. (Civ. Code, sec. 1473; *Wright* v. *Mix*, 76 Cal. 465.) . . .
Having been paid, it became *functus officio*, and no action could
be maintained upon it. (*Gordon* v. *Wansey*, 21 Cal. 79.)' The
same principle is enunciated in *Stone* v. *Hammell*, 83 Cal. 547,[1]
and in *Stanley* v. *McElrath*, 86 Cal. 449. In this state, there-
fore, it seems to be well settled, both by the language of the
code, and by the decisions of this court under it, that full pay-
ment and performance by the surety extinguishes the primary
obligation; that new rights and liabilities then arise,—upon
the part of the principal, to reimburse the surety for the mon-
eys expended, with legal interest, though not according to the
terms of the primary obligation; and upon the part of the
surety, the right to an action in *assumpsit* upon the implied
promise of the principal to make him whole. Since the prin-
cipal obligation is thus extinguished, it cannot be with us as
it may be elsewhere, that the original obligation is kept alive
and passes to the surety by equitable assignment or subroga-
tion. *Redington* v. *Cornwell*, 90 Cal. 49, is relied upon by re-
spondent as being opposed to these views, but that was not the
case of the payment of a debt by a surety. The debt of the
corporation was paid by one of its stockholders, who, in his
complaint, asked to be subrogated to the rights of the original
holder of the debt to enforce the stockholder's liability. He
was himself a stockholder, and interested, therefore, in the
preservation of the corporate property. He was not a mere
volunteer; he was not a surety; but he had, by virtue of his
relations to the corporation, the right to take up the note, and
to hold it and the debt represented by it, and enforce contribu-

---

[1] 17 Am. St. Rep. 272.

tion amongst his fellow-stockholders. Under the circumstances of that case the debt was not extinguished, while by payment on the part of the surety it certainly is extinguished, or section 1473 of the Civil Code is without meaning.

" But as the liability of the stockholder to contribution for a payment of a corporate debt presupposes the existence of such debt, it must necessarily follow that when the corporation debt is extinguished the statutory liability of the stockholders at once ceases. So that in the present case, as matter of law, the debt having been extinguished by the surety's payment, the liability of the stockholders upon that debt came to an end, and neither under the doctrine of equitable assignment nor of subrogation could it have been transferred as a live and subsisting obligation to Mrs. Blair. For, as has been said, upon the full performance by Mrs. Blair the old liability was extinguished, and a new liability sprang up against the corpo- ration and its stockholders, — a liability growing out of her contract of suretyship to reimbursement for what had been ex- pended, including necessary costs and expenses. It was a new debt of the corporation, having its creation in and at the time of the payment by Mrs. Blair, and concurrently with the creation of this new debt came into existence a new liability upon the part of the then stockholders of the corporation for their contrib- utory share of the amount of the debt thus due to Mrs. Blair."

Upon the rehearing of this cause the court has been urged to reconsider the views above expressed. Under our system of pleading, where all the facts of the transaction are set out, it can make little difference, in the generality of cases, whether it be said that an accommodation maker or indorser who has been compelled to meet the obligation of his principal is enti- tled to sue upon the note, with a recovery limited to the amount which he has expended, with legal interest, or whether it be said that his action is in *assumpsit* for money laid out on be- half of his principal, and that his recovery is measured by the amount he has so expended, with legal interest. But in this case the question becomes of consequence for the following rea- son: Plaintiff is seeking to enforce the stockholders' liability for the debt of the corporation against those who were stock- holders at the time when the note in question was executed. If it be held that only these stockholders are liable, the next case to come before us may be one in which the statute of limitations has run against such stockholders, and where the

surety will urge with unanswerable force that when, and only when, he paid the debt of the corporation did a liability upon the part of the corporation to him arise, and insist upon his right of action against those who were stockholders at the time when the corporation became indebted to him. We think, therefore, that the law and the logic of the case can lead but to one conclusion: that the surety's right of action is, in strictness, not upon the note, but is in implied *assumpsit* for moneys paid out and expended, and that as to the stockholders, the surety's right of action is against those who were stockholders at the time when the corporation's liability to the surety was incurred.

Upon the rehearing, for the first time, it was pressed upon the court's notice that all the facts were set up in the complaint, and that as to the stockholders, it was pleaded not only that they were stockholders at the time the corporation gave its note to the bank, but that they continued to be such afterward, and that, in the absence of a special demurrer, here is a sufficient averment, by implication, that they were stockholders at the time when Mrs. Blair paid the corporation's debt (*Williams* v. *Ashe*, 111 Cal. 180; *Holly* v. *Heiskell*, 112 Cal. 174; *Truman* v. *Young*, 121 Cal. 490); and, consequently, that the court's action in granting a new trial should be sustained, under this view. This we incline to think is a tenable construction, but, upon the other hand, as it is a consideration newly injected into the case, it seems but just that the order of the trial court should be affirmed, with costs to appellants upon their appeal.

It is therefore ordered that the order appealed from be affirmed, with leave to the respective parties to amend their pleadings if they shall be so advised, the appellants to have their costs upon this appeal.

Temple, J., McFarland, J., and Garoutte, J., concurred.

Beatty, C. J., concurred in the judgment, except as to the costs.

HARRISON, J., concurring specially.— I concur in the judgment, and in much of the opinion of Mr. Justice Henshaw. I do not, however, assent to that portion of the opinion in which it is held that upon the payment of the note to the bank by Mrs. Blair the obligation of the maker of the note was extinguished, nor to the construction given to section 1473 of the

Civil Code. That section is as follows: "Full performance of an obligation, by the party whose duty it is to perform it, or by any other person on his behalf and with his assent, if accepted by the creditor, extinguishes it."

In order that an obligation may be extinguished, under the provisions of this section there must be a full performance of it by the party "whose duty it is to perform it," or such performance, if by any other person, must be "on his behalf and with his assent," and the obligation which is thus extinguished is that of the person whose duty it was to perform it. In the present case it is not shown or claimed that the payment of the note to the bank by Mrs. Blair was either at the request or with the assent of the corporation, and it is equally manifest from the terms of the note and the character of the transaction that the "duty" of paying the note rested upon the corporation, and not upon Mrs. Blair. The note was, by its terms, the obligation of the corporation, and the entire consideration therefor was received by it. As an indorser of the note, Mrs. Blair became liable to the bank for its payment in case the corporation should fail to pay it, and she should be properly and legally charged therefor. This conditional obligation was the only one which it was the duty of Mrs. Blair to perform, and upon her payment to the bank the only obligation which was extinguished was this conditional obligation. As payment of the note has never been made by the corporation, or by any one on its behalf or with its assent, its obligation created by the note has never been extinguished.

The obligation of the corporation was not extinguished by the payment to the bank by Mrs. Blair, but she thereby became subrogated to all the rights for the enforcement against the corporation of its obligation, that had existed in favor of the bank, or, as was said in *Waldrip* v. *Black*, 74 Cal. 409, "she became the equitable assignee of the note, and entitled to enforce its payment, according to its tenor and effect, as holder thereof." In *Redington* v. *Cornwell*, 90 Cal. 49, it was held that the payment of the corporation's note, by one of its stockholders, did not have the effect to extinguish the indebtedness of the corporation so paid by him, but that such indebtedness could be enforced against the stockholders. The ground upon which it was held in *James* v. *Yaeger*, 86 Cal. 184, that the obligation of the note had been extinguished was, that the payment thereof had been made by one of its makers.

Whether an accommodation indorser, upon being compelled to pay the note, becomes entitled to the note, and may maintain an action thereon against the maker according to its tenor, or an action merely in *assumpsit* for the amount paid by him, has been the subject of much controversy. That he may maintain an action in *assumpsit* has never been controverted; the principal dispute being whether, in an action upon the note, he can recover the full amount thereof, as was held in *Fowler* v. *Strickland*, 107 Mass. 552, or only the amount paid by him, as is perhaps the rule, under the weight of authority. In either case the statute of limitations would begin to run from the time of such payment by the indorser. In *Burton* v. *Slaughter*, 26 Gratt. 914, the rule is stated to be well settled, "that the holder, when the note has been paid or taken up by an indorser, is not compelled to sue in *assumpsit*, but may sue directly on the note, as holder, taking care to confine his recovery to the actual value paid by him for the note." (See also *Fenn* v. *Dugdale*, 40 Mo. 63; *Pinney* v. *McGregory*, 102 Mass. 186; *Ellsworth* v. *Lockwood*, 42 N. Y. 89; *Wadsworth* v. *Lyon*, 93 N. Y. 214.[1])

The question is not material in the present case, as the right of action against the stockholders is in no case upon the note (*Bank of San Luis Obispo* v. *Pacific Coast S. S. Co.*, 103 Cal. 594; *Winona Wagon Co.* v. *Bull*, 108 Cal. 1), but is for their proportion of the corporate liability, and it is incumbent upon the plaintiff to establish the fact that at the time the liability was incurred by the corporation to Mrs. Blair the defendants were stockholders. (*Herman* v. *Hecht*, 116 Cal. 553.) The liability of the corporation in behalf of Mrs. Blair did not arise until she took up the note, and as her payment of the money at that time may be regarded as if it had then been received from her by the corporation, upon the note previously executed by it, only those persons who were stockholders at that time would be liable for the corporate indebtedness. Whether the action be regarded as for the indebtedness then created by virtue of the note, or in *assumpsit* for money then advanced for the benefit of the corporation, the statute would begin to run from that time.

Van Dyke, J., concurred in the opinion of Harrison, J.

---

[1] 45 Am. Rep. 190.