[L. A. No. 6868. In Bank.—February 17, 1922.]

E. W. DAVIES, Respondent, v. J. S. TORRANCE, et al.,
Appellants.

[L. A. No. 6869. In Bank.—February 17, 1922.]

FRED R. HARRIS, Respondent, v. J. S. TORRANCE
et al., Appellants.

[1] PROMISSORY NOTES — EXECUTION BY CORPORATION — PAYMENT BY
SURETIES—ACCRUAL OF INDEBTEDNESS.—The indebtedness of a cor-
poration to sureties on a promissory note executed by the cor-
poration, who paid the note, accrued at the time they paid it.

[2] ID.—CONTRACT OF SURETIES TO PAY NOTE—FINDINGS—SUFFICIENCY
OF EVIDENCE.—In this action against stockholders of a corporation
on their statutory liability to recover the proportionate amount of
a promissory note executed by the corporation, it is held that the
evidence was sufficient to sustain the finding that the contract of
the plaintiffs to pay the note was made to the payee at the re-
quest of the corporation.

APPEAL from judgments of the Superior Court of Los
Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Andrews, Toland & Andrews and Andrews, Toland,
Gregg & Andrews for Appellants.

J. Wiseman Macdonald and W. W. Wallace for Re-
spondents.

WILBUR, J.—These actions, consolidated by stipulation,
were brought to recover from defendants upon their statu-
tory liability as stockholders in the California Shoe Manu-
facturing Company, hereinafter called "the corporation,"
their proportion of the amount of a promissory note,
wherein the First National Bank, hereinafter called "the
bank," was payee, the corporation was payor, and the plain-
tiffs were either joint guarantors or sureties. The note was
given July 13, 1915, in renewal of an obligation of the corpo-
ration incurred June 6, 1911, and was payable upon demand.
Both plaintiffs were stockholders and directors, and E. W.
Davies was president of said corporation at the time the
note was given. Upon the default of the corporation one-

half of the amount due thereon, $4,040, was paid March 30, 1917, by each plaintiff to the bank.

[1] If the plaintiffs were sureties for the corporation, then the indebtedness of the corporation to them accrued at the time they paid the note, to wit, March 30, 1917 (*Yule* v. *Bishop,* 133 Cal. 574 [62 Pac. 68, 65 Pac. 1094]; *Coulter Dry Goods Co.* v. *Wentworth,* 171 Cal. 500 [153 Pac. 939]).

Appellants claim that plaintiffs were not sureties but were guarantors and that, therefore, if they have any remedy against the stockholders at all it is by subrogation or contribution against those who were stockholders at the time the original indebtedness was incurred by the corporation (*Redington* v. *Cornwell,* 90 Cal. 49 [27 Pac. 40]), and not against the appellants who first became stockholders September 27, 1913.

The court found that the plaintiffs were sureties upon said note and that they executed the instrument of suretyship at the request of and upon agreement with the defendant corporation. Without directly attacking this finding, appellants argue that the relationship of the plaintiffs to the corporation was that of guarantors, and that they are not sureties within the meaning of our statutes and decisions for the reason that the contract was made without the knowledge or consent of the corporation and in direct violation of the wishes thereof. Our Civil Code (section 2831), defines a surety as "One who at the *request of another,* and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor." (Italics ours.)

[2] The question for our consideration is whether or not there was sufficient evidence to sustain the finding that the contract of the plaintiffs to pay the note was made to the bank at the request of the corporation. We will pass to a consideration of the evidence and findings not attacked to determine that question.

The trial court found that on June 6, 1911, the corporation became indebted to the bank on a promissory note for $10,000; that on that day plaintiffs became *sureties for and guarantors of* the indebtedness of the corporation under a written contract of suretyship whereby said plaintiffs guaranteed to the bank the payment of all present and future

indebtedness of the corporation to the bank, not exceeding the sum of $20,000; that this written contract was a continuing guaranty which could only be satisfied by the payment of all the obligations due to the bank; that on September 23, 1913, the corporation was indebted to the bank for $19,000 and that plaintiffs were obligated in writing as guarantors of and sureties for said indebtedness; that on the 12th of July, 1915, the sum of $12,000 was due from the corporation to the bank on account of said indebtedness and on said date the corporation paid $3000 and delivered "a new promissory note for the sum of $9,000 for the balance of said indebtedness to the First National Bank. That said note was given in renewal of the remaining portion of said indebtedness; that it was not true that the same was not a new obligation."

On June 6, 1911, a resolution of the corporation was adopted wherein the president and secretary of the corporation were directed and empowered to borrow from time to time of the bank and in the name of the corporation any sum or sums not to exceed $20,000 for such time and on such terms as they might from time to time arrange for and to execute and deliver the note or notes of the corporation therefor and any renewal or renewals thereof. The said note or notes to be in the form commonly used by the First National Bank of Los Angeles.

According to the minutes of the corporation, on July 12, 1915, at 2 o'clock P. M., Directors Torrance, the appellant, Harris and Davies, the plaintiffs, and Wagner were present. The minutes state that "On motion of Mr. Davies, seconded by Mr. Torrance, it was agreed to pay the First National Bank of Los Angeles, at Los Angeles, California, $3,000 out of the receipts of the first assessment, and ask the First National Bank of Los Angeles to accept a new note for the balance of $9,000 due them, without the directors' indorsements." On the same date another resolution was passed reciting that the corporation had borrowed $9,000 from the bank and authorized and directed the president or vice-president and secretary to execute a corporation note therefor payable in sixty days from date, etc. The bank refused to accept a new note without security. It demanded the indorsement of all the directors, but when told that the indorsement of all the directors could not be obtained, it

accepted the separate written agreement of plaintiffs to pay
the same, which agreement the court found to be one of
suretyship. Three of the four directors of the corporation
who participated in the meeting of July 12, 1915, joined in
the consummation of the agreement with the bank, to wit:
E. W. Davies, president, and Charles H. Wagner, secretary,
who signed the promissory note on behalf of the corporation
as such president and secretary, and Fred R. Harris, who,
with E. W. Davies, signed the agreement now relied upon
by plaintiffs as a contract of suretyship.

In June, 1911, at the time of the inception of the original
indebtedness to the bank by the resolution of June 6, 1911,
the president and secretary were authorized to borrow money
from the bank upon such terms as they could arrange for
and to execute the corporation's notes and renewals there-
for. The trial court found that as to the original indebted-
ness, the plaintiffs, Harris and Davies, were sureties and
hence that they had been requested by the corporation to
execute their obligation to the bank. In order to secure
such initial loans it was evidently necessary to give the
bank the personal obligation of Harris and Davies. The
court might well have based its conclusion that the obliga-
tion of July 13, 1915, was executed upon the request of the
corporation, made in June, 1911, for that was the inception
of the plaintiffs' obligation, and, so far as we can see, bound
the plaintiffs to pay the new note for $9,000 executed July
13, 1915, as well as the obligation theretofore due the bank,
of which the latter note was a renewal. Hence, plaintiffs'
promise of July, 1915, was merely a renewal of an agree-
ment of suretyship theretofore existent. Moreover, if this
be true, plaintiffs would be entitled to the judgment they
obtained because, in satisfying the note of the bank, they
were required to do so by the agreement of June, 1911, as
well as by that of July, 1915, and the mere fact that the
complaint was predicated upon the later promise rather than
the earlier one did not result in a miscarriage of justice.
However, the finding of the trial court that the plaintiff's
agreement of July, 1915, was one of suretyship is manifestly
sustained by the evidence, not only because of what has
just been stated, but for the further reason that if the officers
of the corporation in order to renew the note which the
corporation had authorized them in July, 1915, to renew,

found it necessary to themselves execute or renew their personal obligation to pay the indebtedness in order to carry out the instructions of the board of directors of July 12, 1915, to renew the note and the resolution of June, 1911, to secure the money upon such terms as it could be secured and to renew the note given therefor, it must be obvious that the personal obligation so given must be deemed to have been given at the request of the corporation expressed by its duly authorized officers. There is nothing in the conduct of the board of directors or in the resolution passed on July 12, 1915, which in anywise restricted the power of the president and secretary as conferred upon them by the original resolution of June 6, 1911. The point relied upon by the appellants in these resolutions is that it was therein provided that the bank should be asked to make the renewal without the personal indorsement of the directors. The request was made and promptly denied. Notwithstanding this prompt denial the president and secretary executed a note by which the time for payment was extended, as it was no doubt expected they would do. The resolution of June 6, 1911, was still in force and authorized Davies as president and Wagner as secretary to make such terms with the bank as might be necessary. Those terms included the securing of the Harris and Davies agreement to pay the bank. At the time the new agreements were executed the corporation paid $3,000, thus reducing the indebtedness of the corporation from $12,000 to $9,000.

On December 15, 1915, the corporation paid $1,000 upon said note and paid interest thereon. The corporation secured the full benefit of the transaction. It is true that the appellant Torrance refused to sign the note as an indorser and stated that he declined to pay anything or assume any obligation which the law did not impose upon him. He did, however, join in the resolution of the board of directors for the borrowing of the money from the bank and the execution of the note therefor and in the request that the bank make the new note without requiring the indorsement of the directors. The appellants contend that the obligation of Harris and Davies to the bank was made voluntarily and surreptitiously given and claim that the appellants knew nothing about it for some months thereafter. This is wholly immaterial. The officers of the corporation charged by it

with the duty of making arrangements with the bank also made the arrangements with plaintiffs and in doing so acted for the corporation. The appellant stockholders are as much bound by the acts of the officers and directors as if they had consented thereto, and are no worse off than they would have been if the corporation had borrowed the money in July, 1915, from some other bank and therewith discharged its overdue obligation to the First National Bank.

Judgment affirmed.

Sloane, J., Lennon, J., Shurtleff, J., Lawlor, J., and Shaw, C. J., concurred.