[Civ. No. 4343. Third Appellate District.—April 10, 1931.]

T. M. HARRIS et al., Respondents, v. ROY J. KING et al., Appellants.

Mark R. Averill and M. S. Hamilton for Appellants.

Nilon, Hennessy & Kelly for Respondents.

PLUMMER, J.—The plaintiffs had judgment against the defendants in the court below, from which judgment the defendants appeal upon the judgment-roll alone.

The record shows that on or about July 1, 1926, the appellants and respondents executed and delivered their promissory note for $900 to the Bank of America, at its office in Grass Valley, California. On or about the seventeenth day of January, 1930, the respondents herein paid to said bank the sum of $939.69, being the balance of principal and interest then due and unpaid on said note. The bank, upon receiving payment, indorsed upon the note the words "without recourse", and delivered the note thus indorsed to the respondents. Thereafter, the respondents brought this action, and judgment was entered in their favor as above stated.

The contention of the appellants is that this action, based upon the promissory note referred to, cannot be maintained.

By reason of the contention advanced upon this appeal and our views hereinafter expressed, it is necessary to set out the complaint in full, which is in the words and figures following, to wit:

"Plaintiffs complain of defendants and for cause of action allege:

"I.

"That on the 1st day of July, 1926, plaintiffs and defendants made and delivered to Bank of America of California, a corporation, their promissory note, of which the following is a copy:

" '$900.00 Grass Valley, California,
" 'July 1st, 1926.

" 'In U. S. Gold Coin.

" 'Six months after date (without grace), for value received in United States Gold Coin, we or either of us promise to pay to the order of the Bank of America of California, successor to Nevada County Bank, at its office in Grass Valley, California, the sum of Nine Hundred Dollars —— with interest thereon at the rate of seven (7) per centum, per annum from date until paid, principal and interest payable in United States Gold Coin only; said interest payable quarterly, and if not paid as it becomes due, to be added to the principal and become a part thereof, and to bear interest at the same rate. And in case said interest, or any part thereof, is not paid within ten days after same shall become due, the whole of said principal sum shall forthwith become due and payable at the election of the holder of this note.

" '(Signed) Roy J. King,
" 'Bessie L. H. King,
" 'T. M. Harris,
" 'D. E. Matteson.

" 'No. 7208 Due ————.
" 'U. C.'

"II.

"That plaintiffs received no compensation therefor, but the same was an accommodation note on the part of said plaintiffs, given to said defendants at their special instance and request, and upon their promise that they would pay it at maturity.

## "III.

"That as plaintiffs are informed and believe, defendants thereupon, and before its maturity, negotiated said not for value, and transferred and delivered the same to the payee therein named.

## "IV.

"That said defendants did not pay said note at maturity; and that said plaintiffs were therefore compelled to, and did, on the 17th day of January, 1930, pay the sum of $939.69 to the payee named in said note, as the balance of principal and interest then owing and unpaid on said note; and received from said payee its endorsement and assignment of said note. That said payee then and there endorsed the said promissory note—'without recourse', and delivered the same to plaintiffs.

## "V.

"That plaintiffs are the present owners and holders of said promissory note.

## "VI.

"That no part of the principal and interest upon said promissory note has been paid except $100.00 on the principal thereof, and interest on said note up to the 2nd day of August, 1927; and that the sum of $939.69, with interest thereon from the 17th day of January, 1930, at the rate of 7% per annum, remains wholly owing and unpaid thereon.

"Wherefore, plaintiffs pray judgment against said defendants for the said sum of $939.69, in lawful money of the United States, with interest thereon at the rate of 7% per annum from the 17th day of January, 1930; and for such other and further relief as is meet in the premises.

"NILON, HENNESSY & KELLY,
"Attorneys for Plaintiffs,
"Grass Valley, California."

The findings and conclusions of the court include twenty-two paragraphs, but may be summarized as follows: That the plaintiffs and defendants made and delivered to the bank the promissory note set out in the complaint; that plaintiffs received no compensation therefor, but the same was an accommodation note on the part of said plaintiffs; that the defendants negotiated the note before maturity; that the defendants did not pay said note at maturity, and plaintiffs were compelled to, and did, on the seventeenth day

of January, 1930, pay the sum of $939.69 to the payee named in said note as the balance of principal and interest then owing and unpaid on said note, and received from said payee its indorsement and assignment of said note; that the payee indorsed said note "without recourse", and delivered the same to the plaintiffs; that the plaintiffs are the present holders and owners of said promissory note; that no part of the principal and interest on said note has been paid except $100 on the principal thereof, and interest on said note up to the second day of August, 1927, and that the sum of $939.69, with interest thereon from the seventeenth day of January, 1930, at the rate of seven per cent per annum, remains wholly owing and unpaid thereon; that said transaction, on the seventeenth day of January, 1930, hereinbefore referred to in paragraph No. IV of said findings, constituted the purchase of said promissory note by said plaintiffs, and did not constitute a payment of said promissory note; that each of said plaintiffs and Roy J. King were, at the date of said promissory note, stockholders in that corporation known as the "Grass Valley Gold Mines Company"; that said promissory note was not made or delivered for the accommodation of said corporation; that the making and delivery of said note was done in pursuance of an agreement had between each of said plaintiffs and said defendants, but was not all made at one time, nor as one transaction; that the moneys derived from said note were paid to said defendant Roy J. King, but were not expended by said defendant, or anyone else, for and on behalf of said corporation; that the moneys derived from said note were expended for and on behalf of the defendants; that all of said transactions were made with the knowledge and consent of the plaintiffs; that the defendants received a valuable consideration for the making and delivery of said note; that said promissory note — plaintiffs' exhibit "A," and the promissory note, defendants' exhibit 1—did, and each of them does, constitute a renewal of the original promissory note; that the original promissory note—plaintiffs' exhibit "B"—and each of said renewal notes, were signed, executed and delivered by the parties in pursuance of an agreement by and between the parties to this action, made and entered into on or about the eighteenth day of December, 1922, whereby it was understood and agreed by and between

said parties that said original note should be executed by the defendants as principal makers, and by the plaintiffs as accommodation makers.

The defense to the action was that the promissory note referred to in plaintiffs' complaint was executed and delivered for the accommodation of a certain mining corporation known as the "Grass Valley Gold Mines Company", of which corporation the plaintiffs and the defendant Roy J. King were alleged to be stockholders.

Under the terms of the promissory note set out in the plaintiffs' complaint all of the defendants whose names appeared thereon were primarily liable to the payee therein named. Section 3266a of the Civil Code reads: "The person primarily liable on an instrument is the person who, by the terms of an instrument, is absolutely required to pay the same." By the provisions of sections 2847 and 2848 of the Civil Code a surety satisfying the principal obligation is entitled to enforce every remedy which the creditor then had against the principal, to the extent of reimbursing what the surety has been compelled to expend. In the case at bar, however, the plaintiffs occupy the position of comakers of the promissory note, and were equally liable to the bank for payment thereof, and immediately upon making payment, the promissory note was discharged and is no longer a living obligation on the part of the makers thereof. Whatever right of action there may exist between the parties themselves, either as to reimbursement or contribution, no such action can be had upon the promissory note. Section 1473 of the Civil Code is definite as to the extinguishment of the primary obligation. It reads: "Full performance of an obligation by the party whose duty it is to perform it, or by any other person on his behalf and with his assent, if accepted by the creditor, extinguishes it." Section 1474 of the Civil Code reads: "Performance of an obligation by one of several persons who are jointly liable under it, extinguishes the liability of all." This question received full consideration in the case of *Yule* v. *Bishop*, 133 Cal. 574 [62 Pac. 68, 65 Pac. 1094]. We quote from the opinion in that case as follows: "That there might be no room for controversy, with the enactment of the code the question was laid at rest in this state by the declaration that the full performance of the obligation by any person on

behalf of the principal with his assent, if accepted by the creditor, extinguishes the obligation. (Civ. Code, sec. 1473.) In *James* v. *Yaeger,* 86 Cal. 187 [24 Pac. 1005], this court said: 'By the payment to the payee the note becomes extinguished, and ceases to be a binding obligation. (Civ. Code, sec. 1473; *Wright* v. *Mix,* 76 Cal. 465 [18 Pac. 645].) . . . Having been paid, it became *functus officio,* and no action could be maintained upon it. (*Gordon* v. *Wansey,* 21 Cal. 79.)' The same principle is enunciated in *Stone* v. *Hammell,* 83 Cal. 547 [17 Am. St. Rep. 272, 8 L. R. A. 425, 23 Pac. 703], and in *Stanley* v. *McElrath,* 86 Cal. 449 [10 L. R. A. 545, 25 Pac. 16, 26 Pac. 800]. In this state, therefore, it seems to be well settled, both by the language of the code, and by the decisions of this court under it, that full payment and performance by the surety extinguishes the primary obligation; that new rights and liabilities then arise,—upon the part of the principal, to reimburse the surety for the moneys expended, with legal interest, though not according to the terms of the primary obligation; and upon the part of the surety, the right to an action in *assumpsit* upon the implied promise of the principal to make him whole. Since the principal obligation is thus extinguished, it cannot be with us as it may be elsewhere, that the original obligation is kept alive and passes to the surety by equitable assignment or subrogation.''

In *Waldron* v. *Lyon,* 92 Cal. App. 400, 268 Pac. 457 [269 Pac. 450], the questions presented upon this appeal were likewise considered. In that case the action was in the nature of *assumpsit* for money paid for the uses and purposes of the defendant, and was therefore sustainable. The court said: ''Appellant urges three points: First, that no action can be maintained on the first two promissory notes under the theory of the stockholders' liability, for the reason that the principal obligation was satisfied by the payment of the notes and only an action in *assumpsit* would lie against the corporation, for reimbursement or for a contribution between indorsers, and cites us to sections 2847 and 2848 of the Civil Code; that no action was filed against the corporation to seek reimbursement in *assumpsit,* nor was the corporation made a party to the suit. In answer to this objection it may be said that plaintiff's action is not on the notes, but on a new and original obligation which arose

*ipso facto* by operation of law when the notes and the obligations evidenced thereby were paid by the indorsers of the notes. The case of *Yule* v. *Bishop,* 133 Cal. 574 [62 Pac. 68, 65 Pac. 1094], cited by appellant, is not in conflict with this view, nor are the other cases cited. . . . *Yule* v. *Bishop, supra,* principally relied upon by appellants, is a case where the accommodation indorser paid the note and took an assignment of the note from the bank. She subsequently assigned the note to one Black, who brought an action against the corporation and recovered judgment for the amount so paid by the accommodation indorser. Thereafter the note was assigned to the plaintiff, who brought suit to enforce the statutory liability of the stockholders on this debt of the corporation evidenced by the note and judgment, which original debt the court held no longer existed—that by the payment to the payee the note became extinguished and ceased to be a binding obligation. Here plaintiff does not seek to recover on the notes but upon a new obligation which arose *ipso facto* by operation of law when the notes and the obligations evidenced thereby were paid by the indorsers.''

Again, in *Lavers* v. *Jones,* 96 Cal. App. 248 [274 Pac. 78], the distinction is pointed out as to what actions can be maintained and what actions cannot be maintained. The court there said: ''As to the first cause of action, appellant's contention that as the note was paid by Brown, the obligation was discharged and consequently that no recovery on the note could be had by Brown or his assignee as against the comaker of the note, finds support in the cases of *Yule* v. *Bishop,* 133 Cal. 574 [62 Pac. 68, 65 Pac. 1094], and *McDonough* v. *Nowlin,* 17 Cal. App. 45 [118 Pac. 463]. However, in each of those authorities a pleading such as is stated by plaintiff in the second cause of action is directly authorized and recognized as proper in a case of the nature of that here under consideration.''

There are no allegations in the complaint that any money has been paid by the plaintiffs for the uses and purposes of the defendants, nor are there any findings to the effect that any money has been paid by the plaintiffs for the uses and purposes of the defendants, or of either of them. The pleading does not show that any recovery is sought by reason of having paid any money for the uses, purposes or

benefit of the defendants. The whole action and all the findings of the court are based upon the payment of the obligation to the bank, which obligation became of no further force or effect upon its payment. It may be assumed that a cause of action in *assumpsit* immediately arose in favor of the plaintiffs as against the defendants, but there is nothing in the complaint upon which to base such a finding. Respondents call our attention to the second paragraph of the complaint, which reads: ''That plaintiffs received no consideration therefor, but the same was an accommodation note on the part of said plaintiffs, given to said defendants at their special instance and request, and upon their promise that they would pay it at maturity.'' There is nothing in this allegation to the effect that the payment found to have been made by the plaintiffs was for the uses and purposes of the defendants. There is nothing in the paragraph which we have quoted which would change the cause of action from that upon the note set out in the complaint, and which it is alleged was unpaid, and which still remains wholly due, owing and unpaid, to a cause of action sounding in *assumpsit*.

 It follows, necessarily, from what we have said, and the authorities cited, that the complaint does not state a cause of action. Under such circumstances it cannot be held that section 4½ of article VI of the Constitution applies. That section is not intended to create a cause of action upon an instrument where none exists; that section only can be resorted to, to support a judgment, where a cause of action that exists has been erroneously pleaded.

The judgment is reversed.

Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 9, 1931, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 8, 1931.