[Civ. No. 45416. Second Dist., Div. Two. Aug. 25, 1975.]

COLLECTION CONTROL BUREAU, Plaintiff and Appellant, v. JOSEPH L. WEISS, Defendant and Respondent.

**COUNSEL**

Thomas E. Garcin, for Plaintiff and Appellant.

Marcus, Wechsler & Weiss and Alvin Wechsler, for Defendant and Respondent.

**OPINION**

**ROTH, P. J.**—Appellant Collection Control Bureau as plaintiff sued respondent Joseph L. Weiss on a defaulted $5,000 negotiable promissory note (note) made by respondent and assigned to appellant after maturity in the manner hereinafter detailed. This appeal is from the judgment entered in favor of respondent.

On November 8, 1968, respondent as maker delivered note to Crocker Citizens National Bank (Crocker) payable on demand but in no event later than February 6, 1969. Concurrent with its execution Al Yarbrow, respondent's employer, guaranteed note. Respondent defaulted and on February 26, 1969, Crocker demanded and Yarbrow pursuant to said demand[1] paid the amount due on note and concurrently[2] received note from Crocker with Crocker's assignment to Yarbrow endorsed thereon (Exh. 1) in evidence. Crocker on its books and only on its books showed payment of note. The note itself was not marked paid. Yarbrow then assigned note to appellant and appellant sued on August 3, 1972.

Predicated upon the above facts the trial court relying on *Yule* v. *Bishop* (1901) 133 Cal. 574 [62 P. 68, 65 P. 1094], and assuming *Yule* applied to facts at bench, made a finding contrary to Exhibit 1 and the testimony (see fn. 1) that: "Crocker . . . thereupon *marked . . . note paid and so recorded it on its books . . . .*" (Italics added.)[3]

*Yule* and cases that appear to follow it[4] hold that when a guaranteed note is paid by a guarantor thereof the note has been extinguished. *Yule*

---

[1] The undisputed testimony is that Yarbrow received the note when he paid it in response to Crocker's suggestion ". . . I come over and pick up the note and he should assign . . . note to me. He felt it was better to handle it that way when I was paying off the note."

[2] A question was raised as to whether note was concurrently delivered but no evidence was presented to the contrary. Bitgood, the Crocker official who handled the transaction, was not called by respondent. The trial court found: "At or after . . . time of payment . . . bank assigned all of its right, title, and interest . . . to note to Al Yarbrow."

[3] The trial court said in pertinent part: "California is in the minority, . . . payment by a surety extinguishes an obligation on a promissory note. . . . which decision does not appear to have been reversed or modified. Under the doctrine of stare decisis the Court feels compelled to follow the holding in this decision. Thus, when Mr. Yarbrow *paid off the obligation to the bank*, the note executed by the defendant was extinguished and no cause of action remained on the note itself, that judgment must be rendered in favor of defendant."

[4] *Coulter Dry Goods Co.* v. *Wentworth* (1915) 171 Cal. 500 [153 P. 939]; *Dodds* v. *Spring* (1917) 174 Cal. 412, 416 [163 P. 351]; *Chambers* v. *Farnham* (1920) 182 Cal. 191, 194 [187

and its progeny do not make clear and appear to assume that the note discussed in such cases *has itself been marked paid* and that note as a viable instrument has been extinguished. If such is in fact the legal situation in respect of facts similar to those at bench, we are required to assume that a guarantor in a transaction as described at bench accepts an unmarked note properly assigned from its then holder as a receipt for payment and that such payment to the then holder automatically converted the note assigned to a paid note because the debt to the holder had been extinguished. The implicit and inherent motive of any such transaction shows to the contrary that what the parties purport to do is to place a guarantor or any payor of a note under such circumstances in the legal shoes of the payee of the note. If payment is to be a receipt only it could be a complete receipt only if the note were marked paid in full.

It is clear from the record that Crocker and Yarbrow did not intend to extinguish note.

Payment was not endorsed on note nor is there anything in the evidence to show that Crocker intended to extinguish the note when it assigned it to Yarbrow or that Yarbrow expected or would have accepted a note marked paid in full in return for relieving the original payee of note of the obligation to collect it. To the contrary the transaction as reflected by the record and the assignment of Exhibit 1 (the unpaid note) indicate that the parties intended to effect exactly what the note itself reflects, to wit, that although Crocker on its books indicated payment to it of its loan to maker of note, note itself and the obligation it represented were assigned by Crocker to Yarbrow and that Yarbrow expected to receive a viable note, albeit in default, and Crocker intended to and did deliver a viable unpaid note to Yarbrow. (See fn. 1.)

Nothing in the guarantee at bench required Crocker to deliver note to Yarbrow. Nothing in the guarantee gave Yarbrow the right to insist on delivery of an unpaid note and if Yarbrow intended to rely on his rights as a guarantor against respondent he would have had note marked paid. Legal logic and ordinary business common sense point infallibly to the fact that Yarbrow intended to buy and Crocker knew that Yarbrow was

P. 732]; *Bailes* v. *Keck* (1927) 200 Cal. 697. 700 [254 P. 573, 51 A.L.R. 930]; *Comeau* v. *Keene* (1930) 209 Cal. 256 [286 P. 1040]; *Wills* v. *Woolner* (1913) 21 Cal.App. 528, 529 [132 P. 283]; *Graham* v. *Durnbaugh* (1919) 44 Cal.App. 482, 485 [186 P. 798]; *Lavers* v. *Jones* (1929) 96 Cal.App. 248, 249 [274 P. 78]; *Harris* v. *King* (1931) 113 Cal.App. 357, 362 [298 P. 100]; *Johnson* v. *Mortgage Guarantee Co.* (1931) 117 Cal.App. 416, 420 [4 P.2d 208]; *Indemnity Ins. Co. of N. A.* v. *Sampson* (1940) 40 Cal.App.2d 119, 121 [104 P.2d 374]; and *Berrington* v. *Williams* (1966) 244 Cal.App.2d 130, 134 [52 Cal.Rptr. 772].

buying note by paying the debt it represented so that he could sue on it. If note had been marked paid obviously no action could have been filed on note. There were good business and legal reasons why Yarbrow insisted on delivery of note. It had been established that respondent had in writing acknowledged indebtedness on note. Note could be sued on at any time before the expiration of four years from date of its maturity and earned interest at 8¼ percent per annum. However, if *Yule* is applicable as respondent contends, then guarantor as a surety, must rely for payment upon an assumpsit in respect of which the interest rate of 8¼ percent on note was reduced to 7 percent and a four-year statute of limitations was reduced to two years which had run prior to the filing of the current action.

We are convinced if parties to a commercial transaction such as the one at bench say nothing and do nothing other than exchange money for a transferred note commercial usage implicitly and eloquently stamps the transaction as a sale of the note unless the note itself is marked paid. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839].) At bench the record shows that is precisely what the parties intended. To hold otherwise is to encourage default by the maker of a guaranteed note by gifting the defaulter with legal fringe benefits at the expense of a guarantor benefactor.

For the reasons above stated, we believe that *Yule* and its progeny are directed to a *note marked paid* on its face. However, if we misconceive the holding of that case and if *Yule* and its progeny are intended apply to facts such as those at bench we believe that the doctrine of *Yule* (1900) was recast when the entire subject of negotiable instruments was rewritten with the adoption in 1963 of the Commercial Code.[5] Inconsistent rulings prior to that date have been superseded by the Commercial Code.[6] In point of fact the purpose for the adoption of the Uniform

[5]While there was often disagreement with the rule of *Yule* v. *Bishop* (see Note (1949) 1, Hastings L.J. 84; Comment (1929) 17 Cal.L.Rev. 281; Comment (1931) 19 Cal.L.Rev. 195) it was never overruled. However one noted commentator questions the viability of the *Yule* rule in light of the passage of the Commercial Code. Rintala [Prof. Barbara Brudno], *California's Anti-Deficiency Legislation and Suretyship Law: The Transversion of Protective Statutory Schemes* 17 U.C.L.A. L.Rev. 245, 284, fn. 118.

[6]The State of California law prior to the adoption of the Commercial Code is far from clear. *Sanders* v. *Magill*, (1937) 9 Cal.2d 145 [70 P.2d 159], holds that a surety who has paid a note succeeds to all the rights of a payee under the note.

"The acquiring of an obligation by the surety does not extinguish the obligation, but the same remains in full force and effect in so far as the rights of the surety to recover from third parties liable upon the obligations are concerned. The bank then is in error in contending that the pleadings and evidence show no right of recovery exists in favor of Magill. Magill not only had the right to pursue any endorser of said note who was

Commercial Code was to eliminate anomalies and inconsistencies that had grown up over the years as a result of the operation of case law in a complicated field. One of these inconsistencies that has been eliminated is the denial of the right of the guarantor to collect on a note he has paid. Provision for suit on the instrument is found in Commercial Code sections 3415 and 3603.

Section 3415, subdivision (5), provides "An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

With respect to such section the Uniform Commercial Code comment states: "5. Subsection (5) is intended to change the result of such decisions as *Quimby* v. *Varnum,* 190 Mass. 211, 76 N.E. 671 (1906), which held that an accommodation indorser who paid the instrument could not maintain an action on it against the accommodated party since he had no 'former rights' to which he was remitted. Under ordinary principles of suretyship the accommodation party who pays is subrogated to the rights of the holder paid, and should have his recourse on the instrument."

Section 3603 expands the same right of recourse given to a surety to include a stranger who makes payment. Section 3603, subdivision (2) reads "Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee (section 3201)." The California code comment to section 3603 states: "The person who pays and to whom an instrument is surrendered receives the rights of a transferee under Commercial Code § 3201." The Uniform Commercial Code comment to section 3603 states: "4. With the elimination of 'payment for honor,' subsection (2) provides that with the consent of the holder payment may be made by anyone, including a stranger. The subsection omits the provision of the original Section 121 by which the payor is 'remitted to his former rights.' It rejects such decisions as *Quimby* v. *Varnum,* 190 Mass. 211, 76 N.E. 671 (1906), holding that an irregular indorser who makes payment cannot recover on the instrument. The same result is reached under Section 3—415(5) on accommodation parties. Upon payment and surrender of the paper the payor succeeds to the rights of the holder. . . ." Witkin, without

___

personally liable for the balance due thereon, but he was entitled to any existing securities given for the purpose of securing payment of said promissory note. No rule of law is more firmly established than that a surety upon payment of the principal obligation succeeds to all the rights of the principal in and to said obligation. (Civ. Code, §§ 2848, 2849; 23 Cal.Jur., p. 1078.)" (*Sanders* v. *Magill, supra,* at pp. 150-151.)

discussing these sections, reaches the same conclusion. (See, 2 Witkin, Summary of Cal. Law (8th ed. 1973) Negotiable Instruments, § 120, p. 1380.)

Yarbrow when he guaranteed the note was the employer of respondent. In the current action, contrary to an admission in other proceedings that he owed the note, respondent in a cross-complaint asserted defenses thereto which of course he had the right to assert but the cross-complaint was dismissed.

In view of the state of the record, we reverse with instructions to the trial court to strike its findings that note has been paid and since the fact of nonpayment thereof is not disputed to find that note has not been paid.

However, since the record shows that the cross-complaint was dismissed because the court had indicated it would decide the cause on the doctrine of *Yule,* a retrial is ordered on the issues raised by the cross-complaint. Costs to appellant.

Fleming, J., and Beach, J., concurred.

A petition for a rehearing was denied September 15, 1975, and respondent's petition for a hearing by the Supreme Court was denied October 23, 1975.