[No. D013942. Fourth Dist., Div. One. Mar. 13, 1992.]

FLOJO INTERNATIONAL, INC., Plaintiff, Cross-defendant and Appellant, v.
BRIAN M. LASSLEBEN et al., Defendants, Cross-complainant and Appellants.

## COUNSEL

Hollmann, Wertheimer & Wallenstein and Andrew T. Simmons for Plaintiff and Appellant.

Weil & Walters and David A. Ebersole for Defendants and Appellants.

## OPINION

**FROEHLICH, J.**—This appeal deals with the enforceability of contract commitments made in the course of reorganization of a rubber sandal distribution business. We conclude that the trial court erred in ruling that no consideration supported commitments made by the corporation in connection with the reorganization, and we also determine that the trial court erred in not recognizing the provisions of the California Uniform Commercial Code which govern the rights of a transferee of a negotiable instrument.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties to this transaction are two families and one corporation. The first family is that of Brian M. Lassleben, an importer and distributor of rubber sandals. His involved family member is his father, William Lassleben, who guaranteed debts for the benefit of his son and his son's corporation. The corporation is Flojo International, Inc., created and originally owned by Brian Lassleben. The second family is that of Antonio Santana, a sandal distributor from Mexico. Santana's involved "family" consists of his wife and other relatives (denominated herein Santana), who succeeded to his interests in the transaction upon his death, which occurred prior to the disputes over the contract. The "contract" of reorganization giving rise to this dispute was a tripartite agreement among Lassleben, Santana and Flojo, which modified the rights and obligations of all three parties.

Lassleben was apparently an excellent salesman. He and his corporation imported great quantities of sandals from Santana in Mexico and distributed them in the United States. For reasons not pertinent to this appeal, Brian and Flojo were unable to make current payment for the sandals, running up a debt to Santana at the time of the reorganization of $428,000. In addition to this debt, Flojo owed California First Bank the sum of $75,000, which note had been guaranteed by William Lassleben.

The parties decided that their interests would be mutually served by putting Santana in ownership and control of Flojo, and returning Brian Lassleben to the business of direct sale of sandals. These commitments, which we have termed essentially a business reorganization, were set forth in a five-page written agreement dated December 19, 1984. The agreement was signed by Brian Lassleben, Antonio Santana, and Flojo by Santana signing as its president and chief executive officer.

The agreement recited the ownership and control of Flojo by Brian Lassleben, the then large debt owed by Flojo to Santana, and the desire of the parties to "insure Flojo's continued financial success" by the making of "certain organizational changes." The commitments then set forth in the agreement, insofar as pertain to our present appeal, were as follows:

1. All of Brian's stock in Flojo, as well as a small amount owned by his relatives, would be transferred from Brian to Santana.

2. Brian Lassleben was to resign his position as director and officer of Flojo in favor of Santana.

3. A $33,000 loan on Flojo's books to Brian would be deemed discharged.

4. Flojo entered into a detailed agreement to pay Brian commissions on future sales of sandals. For every pair of sandals sold after the first 930,770 pairs sold from the date of the agreement, Brian would be paid 13 cents a pair. Brian was entitled to receive 20 cents for each pair of Flojo-branded sandals sold by Flojo pursuant to sales made or arranged by Brian and accepted by Flojo after the date of the agreement. Brian was also to receive a commission of 3 percent on sales made by other sales representatives which resulted from Brian's efforts.

5. Flojo agreed to pay the debt to California First Bank within a specified period of time.

6. The commitments to Brian by Flojo were specifically and personally guaranteed by Santana.

In August of 1988 Flojo brought suit against Brian Lassleben and his marketing company (called Flojo Marketing Group, Inc.) for declaratory relief. The central theme of the complaint was that Flojo should not be obligated to Brian under the 1984 agreement because the promises of Flojo were not supported by consideration. Brian cross-complained, seeking an accounting for commissions owed from Flojo and also for payment due under the $75,000 promissory note. The note had become in default and had been satisfied by William Lassleben, the guarantor. William obtained an assignment of the note from California First Bank and reassigned the note to Brian.

The question of consideration for Flojo's commitments to Brian was reached by motion for summary judgment. The court determined that "the

agreement which is the subject of this lawsuit is not binding as to Flojo International, Inc. (Flojo) because it lacks any consideration for Flojo, and that Flojo has no obligation to pay . . . Brian K. Lassleben [*sic*] any royalties thereunder." The order, titled "Order Granting Flojo International, Inc.'s Motion for Summary Judgment," also denied Brian's request for an accounting, determined he was not and never had been entitled to any royalties, and enjoined Brian from further representing Flojo or using its name.

The claim under the $75,000 promissory note was resolved at a later date by court trial. The court awarded judgment in the $75,000 principal amount of the note, as well as interest at 10 percent (determined by the court to be the legal rate) from the date of payment of the note. The court denied Lassleben's claim to a default interest rate of 4 percent over the basic rate provided by the note, and also denied Lassleben's claim for attorney fees. The court thereby adopted Flojo's argument that when a guarantor pays the principal of a guaranteed note the note is extinguished, leaving the guarantor only the right of equitable recovery of the amount paid plus interest at the legal rate.

## Discussion

1. *The Issue of Consideration.* The court granted Flojo's motion for summary judgment on the ground of lack of consideration for Flojo's commitments contained in the 1984 agreement.[1] While the written order is sparse in terms of an explication of the logic leading to this conclusion, the court's reasoning was indicated in discussion of the motion at oral argument. Under the terms of the agreement, Santana obtained ownership and control of Flojo; Lassleben was granted royalty rights for future sales of sandals and also was relieved of his debt to Flojo; but Flojo,

---

[1]Flojo contends the order granting summary judgment was an appealable order, and no appeal or writ petition having been taken in a timely fashion the order is now final and nonappealable. While recognizing that an order disposing of less than the entire action is ordinarily not appealable, Flojo contends the order in this case was appealable because the issue determined (enforceability of the 1984 agreement as to Flojo) was severable from the issue to be tried (the guarantor's recovery of amounts paid to satisfy the California First note) (citing dictum in *U.S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 11 [112 Cal.Rptr. 18]). Assuming, for purposes of discussion, severable causes of action of a complaint could be subject to separate final judgments, that situation is not present here. The order granting the motion for summary judgment was titled "Order . . . Granting . . . Motion." No judgment was entered upon the basis of the order. While writ review may be taken from an order (Code Civ. Proc., § 437c, subd. (1)), an appeal may be taken only from the judgment rendered upon the order granting the motion. (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1991 rev.) ¶ 2:241, p. 2-62.) Since the written decision did not purport to be a "judgment," Lassleben was entitled to rely upon its status as an intermediate order, appealable only upon termination of the entire action. The fact that the court in its final judgment did not incorporate or restate its earlier order does not undermine this conclusion.

the court commented, received nothing. Since Flojo received no benefit from the transaction, it lacked consideration insofar as Flojo's commitments were concerned, and hence such commitments were unenforceable.

■ This approach to the enforceability of agreements reorganizing closely held businesses is somewhat startling. Owners of closely held business entities, whether in corporate form or otherwise, quite regularly enter into commitments which benefit themselves and in some way burden the business entity. From a practical point of view it seems unnecessary and unreasonable to require that some specific benefit be conferred upon the business entity. That the entity's owner has been benefited should be sufficient reason to bind the business entity to its commitments. (See generally, *Cechettini* v. *Consumer Associates, Ltd.* (1968) 260 Cal.App.2d 295, 298-299 [67 Cal.Rptr. 15].)

Fortunately, we do not have to rely on common sense and practicalities to uphold this tripartite agreement. Very old and well-supported principles of contract law recognize the existence of consideration to Flojo in this agreement. Consideration consists not only of benefit received by the promisor, but of detriment to the promisee. Flojo in this case is the promisor—promising to pay royalties to Lassleben. The consideration to Flojo for this promise is the agreement by Lassleben to transfer stock of the corporation to Santana. ■ "[I]f the promisee parts with something at the promisor's request, it is immaterial whether the promisor receives anything, and necessarily involves the conclusion that the consideration given by the promisee for a promise need not move to the promisor, but may move to anyone requested by the offer." (1 Williston on Contracts (3d ed. 1958) Consideration, § 113, p. 449.)

As stated in Restatement Second of Contracts (1981) section 71, comment e at page 176: "It matters not from whom the consideration moves or to whom it goes. If it is bargained for and given in exchange for the promise, the promise is not gratuitous." (Accord, *Cechettini* v. *Consumer Associates, Ltd.*, *supra*, 260 Cal.App.2d at p. 298.) ■ Here, three parties participated in the contractual and ownership reorganization. Santana got ownership and control of Flojo. Lassleben obtained valuable royalty rights in the future. Presumably neither of these objectives could have been obtained, and inferentially relief from the large debt owed by Flojo to Santana would not have been achieved, had Flojo not granted the royalty rights. From all that appears on the face of the contract, Flojo was vitally interested in a change in ownership and management, and it received consideration when that occurred. At the very least the issue was one determinable only upon a full

review of the facts surrounding the execution of the contract. It was error for the court to preclude this factual review by the grant of summary judgment.[2]

2. *Rights Enforceable Under the Note.* As reviewed above, the $75,000 note was a valid and enforceable written obligation, owed by Flojo to California First Bank. The note was guaranteed by William Lassleben. When the note came due and was not paid, the bank called upon the guarantor, and William Lassleben paid the full amount to the bank. The bank delivered the note to William Lassleben with the following written assignment: "Without recourse, for value received California First Bank hereby assigns to William M. Lassleben, Jr. all rights, title and interest in and to the within note." William Lassleben then assigned the note to his son, Brian Lassleben, and the claim upon the note became part of the cross-complaint in this action.

There was no dispute as to Flojo's obligation to reimburse Lassleben for amounts paid for the note, as well as interest thereon at the legal rate from the date of payment. The dispute between the parties was as to attorney fees and default interest. The ordinary interest provided by the note was "prime rate plus two percent." It was further provided, however, that interest on the unpaid balance following maturity of the note would be increased by 4 percent. The note also contained a standard provision for costs and attorney fees incurred in its collection. The court denied the increased interest and attorney fees on the ground that the transaction was not governed by the California Uniform Commercial Code, and that when a guarantor satisfies the guaranteed note, the note is extinguished, the guarantor's rights then being based upon equitable considerations and not the terms of the note.

The common law right of a guarantor who paid the guaranteed obligation was reflected in early California cases. *Yule* v. *Bishop* (1901) 133 Cal. 574 [65 P. 1094] explained that when the guarantor pays the note the primary obligation is extinguished. "[N]ew rights and liabilities then arise—upon the part of the principal, to reimburse the surety for the moneys expended, with legal interest, though not according to the terms of the primary obligation. . . . Since the principal obligation is thus extinguished, it cannot be

---

[2]In discussion of the motion with counsel, the court commented that Flojo was unrepresented in the negotiations for the business reorganization. Counsel discuss this issue in briefs on appeal. We find the question of representation of Flojo to be irrelevant. Representation would be presumed because each of the other two parties to the transaction was serially the chief executive officer of Flojo. Presumptively Lassleben represented Flojo before the transfer of stock, and Santana represented it after the transfer. If by representation the court intended to refer to the actual attendance to the practical interests of Flojo, the failure of such might enter into an ultimate decision as to whether Flojo's promises lacked legal consideration. In any event, however, the issue would be one of fact for consideration at trial and not resolvable on summary judgment.

. . . that the original obligation is kept alive and passes to the surety by equitable assignment or subrogation." (*Id.* at p. 579.) This rule was clarified in *Collection Control Bureau* v. *Weiss* (1975) 50 Cal.App.3d 865 [123 Cal.Rptr. 625], to apply only to situations in which the note, when paid by the guarantor, is marked "paid on its face," rather than being assigned to the guarantor. (*Id.* at p. 869.)

More important to our situation, however, is the recognition in *Collection Control Bureau* that "the entire subject of negotiable instruments was rewritten with the adoption . . . of the Commercial Code." (*Collection Control Bureau* v. *Weiss, supra,* 50 Cal.App.3d at p. 869.) Section 3415, subdivision (5) of the California Uniform Commercial Code provides that "An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party." As the discussion in *Collection Control Bureau* indicates, comments adopted by the uniform code commissioners as well as the California code commentators make clear that the new provision was intended to reverse such decisions as the California case of *Yule* v. *Bishop, supra,* 133 Cal. 574, and its Massachusetts counterpart, *Quimby* v. *Varnum* (1906) 190 Mass. 211 [76 N.E. 671]. (*Collection Control Bureau* v. *Weiss, supra,* at p. 870; and see Cal. U. Com. Code, § 3415, com. 5, as contained in 23B West's Ann. Cal. U. Com. Code (1964 ed.) p. 361 [Deering's Ann. Cal. U. Com. Code (1986) p. 416].)[3]

 Hence, under clear provisions of the California Uniform Commercial Code, Lassleben was entitled to enforce the $75,000 note against Flojo *in accordance with its terms.* These terms included an increased default interest rate and an award of attorney fees.

Flojo attempts to avoid the obviously controlling provisions of the California Uniform Commercial Code by arguments which most charitably may be called novel. We are directed to California Uniform Commercial Code section 3101, which suggests that the code governs "commercial paper." Commercial paper then is defined in section 3104 in terms of "negotiable instruments," and a negotiable instrument under subdivision (1)(d) is a writing "payable to order or to bearer." Then Flojo argues that this note is not a negotiable instrument, and hence not under the California Uniform Commercial Code, because it is to be paid "to the order of California First Bank." We think California First Bank, as well as every other banking

---

[3]Comment 5 states: "Subsection (5) is intended to change the result of such decisions as *Quimby* v. *Varnum,* 190 Mass. 211, 76 N.E. 671 (1906), which held that an accommodation indorser who paid the instrument could not maintain an action on it against the accommodated party since he had no 'former rights' to which he was remitted. Under ordinary principles of suretyship the accommodation party who pays is subrogated to the rights of the holder paid, and should have his recourse on the instrument."

institution in the state, would be most surprised to hear solemn argument in the Court of Appeal to the effect that its standard note phraseology does not create a negotiable instrument. The law, of course, is to the contrary. (See 3 Witkin, Summary of Cal. Law (9th ed. 1987) Negotiable Instruments, §§ 48-50, pp. 312-314.)[4]

Flojo objects to our reliance on the California Uniform Commercial Code on yet another ground: that California Uniform Commercial Code section 3415, subdivision (5), upon which we rely above, is not applicable because William Lassleben was not an "accommodation party." Citing California Uniform Commercial Code section 3102, subdivision (e) and *Bank of America v. Superior Court* (1970) 4 Cal.App.3d 435, 439 [84 Cal.Rptr. 421], Flojo argues that the document executed by William Lassleben was not the negotiable instrument itself, but a separate agreement of guaranty. Since an accommodation party is by definition one who signs the negotiable instrument itself, William Lassleben cannot be an accommodation party. Accordingly, Flojo argues, the situation is not governed by the California Uniform Commercial Code but by the general law of suretyship, which was not altered or repealed by the adoption of the California Uniform Commercial Code.

We have difficulty in accepting the premise that the rights of one who signs as guarantor on the note itself are different from the rights of one who executes the guaranty on a separate piece of paper. However, even if Flojo is correct in the assertion that the rights of a guarantor are governed by a different code than the rights of an accommodation party, the result is the same. The rights and obligations of sureties and guarantors (any distinction between the same having been abolished by Civil Code section 2787 adopted in 1939) are set forth in Civil Code sections 2787 through 2850. When a surety satisfies the obligations of the principal he is subrogated to the rights of the creditor, and "is entitled to enforce every remedy which the creditor then has against the principal . . . ." (Civ. Code, § 2848.) The concept of subrogation puts the surety in the shoes of the creditor whose claim he has paid—according to the surety all the creditor's collection rights. (*Sanders v. Magill* (1937) 9 Cal.2d 145, 150 [70 P.2d 159].)[5] Lassleben as a surety therefore acquired and was entitled to enforce the rights to interest and attorney fees provided by the note.

---

[4]Flojo's brief misstates the ruling of *Von Frank* v. *Hershey National Bank* (1973) 269 Md. 138 [306 A.2d 207], the singular authority which Flojo contends supports its theory. The note in that case was not payable "to the order of Hershey National Bank" as represented in the brief, but was payable simply "to Hershey National Bank." The determination in that case that the note in question was not a negotiable instrument therefore has no application to our case.

[5]*Bray* v. *Cohn* (1907) 7 Cal.App. 124, 126 [93 P. 893] is contra, following the reasoning of *Yule* v. *Bishop*, cited and referred to in the text, *ante*, to the effect that when a surety pays the

Flojo's final argument is that we cannot allow the enforcement of the 4 percent increase in interest rates because such would be usurious. We decline seriously to consider this argument because we are given no adequate briefing on the subject by Flojo. The note in question was a variable interest note. Although the effective default interest rate was briefed to the trial court, no finding as to it was made. We do not know what the effective rate would have been, nor do we know, as a practical matter, what the usury rate at the times in question was. Further, we have no ruling to review, because the trial court made no determination as to the applicability of the usury law in this situation (negotiable instrument originally made to usury-exempt banking institution (Fin. Code, § 1504) but then assigned to private party).

### DISPOSITION

The trial court's order granting summary judgment is reversed. The trial court's award of the principal amount of the note was correct, but its calculation of interest and denial of attorney fees was in error. Since Lassleben is entitled to a judgment inclusive of the increased interest rate calculated to the date of the judgment, we reverse the entire judgment and remand for recalculation. The case is remanded for further trial proceedings consistent with this opinion.

Kremer, P. J., and Huffman, J., concurred.

A petition for a rehearing was denied April 3, 1992.

---

assured obligation he is not subrogated because the obligation is extinguished, and the surety's cause of action is a new one in assumpsit. We believe this approach is now discredited, whether viewed in terms of California Uniform Commercial Code authority or under the laws of suretyship as stated in the Civil Code. We therefore consider *Bray* v. *Cohn* no longer to be good authority.