[No. D021172. Fourth Dist., Div. One. Nov. 25, 1996.]

QUALITY WASH GROUP V, LTD., et al., Plaintiffs and Appellants v. SHAWKAT HALLAK et al., Defendants and Respondents.

SHAWKAT HALLAK et al., Cross-complainants, Cross-defendants and Respondents, v.
QUALITY WASH GROUP V, LTD., et al., Cross-defendants, Cross-complainants and Appellants.

COUNSEL

Kevin E. Monson and Dennis D. Brown for Plaintiffs and Appellants and for Cross-defendants, Cross-complainants and Appellants.

Michael R. McCabe for Defendants and Respondents and for Cross-complainants, Cross-defendants and Respondents.

OPINION

PATE, J.*—This action arises out of the sale of a car wash business by defendants, cross-complainants and cross-defendants Shawkat Hallak and Nahida Hallak (the Hallaks) to plaintiff, cross-complainant and cross-defendant Quality Wash Group V, Ltd., a limited partnership.[1] Quality sued the Hallaks for breach of contract and negligent misrepresentation based in part upon Quality's discovery that the car wash improvements and business activities encroached on adjoining property. Quality also sought to hold the Hallaks liable as joint and several co-obligors on a promissory note (the Allan note) Quality assumed as part of the purchase price of the car wash and eventually paid off in settlement of the collection action brought by its holders against Quality and the Hallaks. The Hallaks filed a cross-complaint against Quality seeking to collect on a separate promissory note executed by Quality in favor of the Hallaks, also as part of the purchase price of the car wash (the Hallak note). All of these claims were tried in the court.

On appeal from a judgment in favor of the Hallaks on their cross-complaint to collect on the Hallak note and on Quality's claims for breach of contract, negligent misrepresentation and indemnity under the Allan note, Quality contends the court committed reversible error by (1) misinterpreting the purchase agreement in finding there was no breach of contract; (2) misapplying the law regarding negligent misrepresentation; (3) admitting into evidence trial exhibit 27, a purported photocopy of the Hallak note; and (4) failing to offset the judgment in the amount of the Allan note. We reverse

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]Appealing with Quality Wash Group V, Ltd., is coplaintiff, cross-complainant and cross-defendant Larry E. Schaadt, who is an officer of the corporate general partner of Quality Wash Group V, Ltd., and co-cross-complainant and cross-defendant Classic Car Wash, the intended franchisor for the car wash after its purchase by Quality Wash Group V, Ltd. For convenience, we hereinafter refer to appellants collectively as Quality, although appellant Classic Car Wash was neither a plaintiff in Quality Wash Group V, Ltd. and Schaadt's action for breach of contract and negligent misrepresentation nor a party to the car wash purchase agreement.

the portion of the judgment finding the Hallaks did not breach the purchase agreement and affirm the remaining portions of the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The subject car wash was originally built by Harvey and Patricia Allan in 1962. The Allans held the car wash in the name of San Diego Oil Co., a corporation. In 1978, the Allans sold the car wash to Robert and Jo Lynn Brower, transferring to them all the shares of San Diego Oil Co. As part of the purchase price, the Browers executed a promissory note in favor of the Allans (the Allan note). In 1984, the Browers transferred all the shares of San Diego Oil Co. to the Hallaks. As part of that transaction, the Hallaks became obligated with the Browers under the Allan note.

In January 1986, Quality acquired the car wash by purchasing all the shares of San Diego Oil Co. from the Hallaks. Quality then dissolved the corporation and held the car wash directly as an asset of the limited partnership. Under the purchase agreement between Quality and the Hallaks, the Browers were relieved of liability under the Allan note and Quality became jointly and severally liable under the note with the Hallaks. Additionally, Quality signed and delivered a promissory note in favor of the Hallaks (the Hallak note).

During the course of negotiations between Larry E. Schaadt and the Hallaks regarding Quality's purchase of the car wash, Mr. Hallak and the original owner Harvey Allan, who was then a real estate broker acting on behalf of the Hallaks, pointed out what they thought to be the west boundary of the leasehold on which the car wash was situated. In 1987 the lessor of the car wash premises notified Quality that the car wash was encroaching on adjoining property. When Schaadt contested that notice, the lessor sent a surveyor to mark the boundaries according to the legal description of the leasehold property. The survey revealed the property line on the west side of the leasehold ran through the car wash building, cutting off vacuums and a substantial part of the business's area of operations.

Quality's lessor demanded Quality cease trespassing on the adjoining property and proposed Quality resolve the encroachment problem by entering into a new lease agreement. Since it was unable to operate the car wash under the existing lease, Quality entered into a new lease agreement which allowed it to use the encroachment area but required it to pay substantially higher rent. Thereafter, a dispute arose concerning, among other things, the Hallaks' and Harvey Allan's liability to Quality for the encroachment problem. As a result of that dispute, Quality refused to make any further payments on either the Hallak note or the Allan note.

On May 31, 1989, Quality filed an action in Santa Clara County Superior Court against the Hallaks and their broker Harvey Allan for breach of contract and negligent misrepresentation.[2] On October 2, 1991, the Allans filed an action in San Diego County Superior Court against Quality and the Hallaks seeking to collect on the Allan note and a separate note in the amount of $10,199.33 executed by Quality in favor of the Allans. The Hallaks filed a cross-complaint in the San Diego action against Quality, pleading, inter alia, claims for payment under the Hallak note and for contractual indemnity with respect to the Allan note. Quality filed a cross-complaint in the San Diego action for indemnity and contribution against the Hallaks and the Allans. Quality's Santa Clara County action was eventually transferred to San Diego County Superior Court and consolidated with the action filed by the Allans.

Before trial, Quality settled with the Allans by paying off and taking an assignment of the Allan note. Following a bench trial of the various claims between Quality and the Hallaks, the court found the Hallaks were not liable for negligent misrepresentation or breach of contract and denied Quality any recovery against the Hallaks on the Allan note, finding Quality was primarily liable on the note and the Hallaks were only jointly and severally liable to the extent Quality defaulted. The court found in favor of the Hallaks on the Hallak note, awarding them $157,500 against Quality as the sum due under the note. Judgment was entered accordingly.

## I.

### DISCUSSION

#### *The Court's Interpretation of the Purchase Agreement*

██ Quality contends the car wash's encroachment was a breach of the seller's warranty and hold-harmless provisions of the purchase agreement between Quality and the Hallaks. The seller's warranty provides, in pertinent part, "Seller makes the following representations regarding the assets: [¶] a. The title to all assets of the business [is] vested in the corporation . . . and [is] free from any liens and/or encumbrances." The hold-harmless clause provides: "Seller and corporation warrant that all the above representations are true and hereby [hold] buyer harmless from any damage resulting from their falsity. This warranty shall be true as of the close and shall survive the close. Seller and corporation agree to hold buyer harmless from all loss, liability, tax or expense arising out of any claim or other loss

---

[2] Quality's complaint contained additional causes of action which are not relevant to this appeal.

resulting directly or indirectly from the assertion against seller or corporation of any claim arising from facts existing before the transfer of the corporate stock provided by this agreement and not fully disclosed or expressly excepted by the provisions hereof."

In its statement of decision the court addressed these provisions as follows: "The Court, in examining the contract on its face, finds that said Paragraphs do not specifically relate to the boundary parameters of the leased premises, and Quality's argument would involve applying the hold-harmless and warranty provisions of the contract to a verbal representation which was not contained in the four corners of the contract. The Court's finding, therefore, is that all the representations contained in the written contract were true."

We conclude the court misinterpreted the warranty and hold-harmless provisions of the purchase agreement. ■ "The interpretation of a written instrument such as a contract is a question of law which we review de novo. Where the facts are not in dispute, the issue is one of law and the appellate court is therefore free to draw its own conclusions of law from the undisputed facts. [Citations.]" (*Lincoln National Life Ins. Co.* v. *State Bd. of Equalization* (1994) 30 Cal.App.4th 1411, 1416 [36 Cal.Rptr.2d 397].) ■ At trial it was uncontroverted certain improvements and fixtures of the car wash encroached on adjoining property. Thus, whether the encroachment constituted a breach of the seller's warranty entitling Quality to indemnity under the hold-harmless provision of the purchase agreement is a question of law.

The seller's warranty provision of the purchase agreement expressly warranted that title to all assets of the business were free from any encumbrances. The business leasehold, as well as the encroaching fixtures and improvements of the car wash, were assets of the business. ■ "As applied to an estate in land an encumbrance may include whatever charges, burdens, obstructs, or impairs its use or impedes its transfer." (*Johnson* v. *Bridge* (1923) 60 Cal.App. 629, 632 [213 P. 512].) "[A] leasehold is an estate in land." (*Robinson* v. *City of Alameda* (1987) 194 Cal.App.3d 1286, 1289 [239 Cal.Rptr. 926].) *Johnson* concluded the encroachment of a house on adjoining property was an encumbrance and, therefore, the seller of the house breached her warranty that the premises were delivered to the buyer free and clear of all encumbrances. (*Johnson* v. *Bridge, supra,* 60 Cal.App. at p. 632.) ■ Applying *Johnson*'s definition of encumbrance here, title to the business leasehold was encumbered by the car wash's encroachment because once the lessor became aware of the encroachment and demanded it cease, the encroachment impaired Quality's use of the leasehold property for

its intended business purposes. Certainly, the encroachment impaired Quality's ability to transfer the leasehold to any prospective purchaser of the business. The encroaching fixtures and improvements of the business were similarly encumbered, as their use and transferability as assets of the car wash business were also impaired by the encroachment.

Since the encroachment operated as an encumbrance on the title to assets of the business, the Hallaks are liable to Quality under the hold-harmless provision of the purchase agreement, as one of the representations warranted to be true by that provision was the representation that title to the assets of the business were free from encumbrances. Under the hold-harmless provision, the Hallaks are obligated to indemnify Quality for damages it suffered as a result of the falsity of the representation of unencumbered title—i.e., for damages Quality can prove resulted from the encroachment of the car wash on adjoining property.[3]

The trial court concluded the seller's warranty provision did not apply to the encroachment because it did not specifically relate to the boundary parameters of the leased premises. However, the warranty that assets of the business are free of encumbrances need not specify a particular asset in order to be effective as to that asset. Otherwise, the warranty provision would be of no effect because it does not specify *any* particular asset of the business. Rather, the warranty provision unambiguously applies to all the assets of the business and therefore applies to the leasehold and the fixtures and improvements that encroached on the adjoining property.

The Hallaks' principal contention in response to Quality's breach of warranty argument is that there was no encroachment and therefore no encumbrance. However, the Hallaks neither contended nor presented evidence at trial that the lessor's survey was wrong and the true property line was as represented by Hallak and Allan. To the contrary, the Hallaks' counsel stated in closing argument, "The point of all of this essentially is if there were a misrepresentation—and we have not put on any dog and pony show that there wasn't—that it was a big miscommunication on his part. *We acknowledge there was a problem there,* but if it's a problem it's an innocent mistake of fact . . . ." (Italics added.) Having essentially conceded at trial that the location of the leasehold's west boundary was misrepresented, the Hallaks cannot now be heard to argue there was no encroachment as a matter of fact.

We conclude the court erred in deciding the warranty and hold-harmless provisions do not apply to the encroachment of the car wash onto adjoining property.

---

[3]We offer no opinion as to the damages suffered by Quality as a result of the Hallaks' breach of warranty, as this is a factual issue which must be resolved through further proceedings in the trial court.

## II.

### *Negligent Misrepresentation*

 Quality contends the court misapplied the law regarding negligent misrepresentation in denying Quality recovery under that theory.

 " 'Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.' [Citations.]" (*Bily* v. *Arthur Young & Co.* (1992) 3 Cal.4th 370, 407 [11 Cal.Rptr.2d 51, 834 P.2d 745].) Whether a defendant had reasonable ground for believing his or her false statement to be true is ordinarily a question of fact. (*Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 422 [159 P.2d 958].)

 Quality contends the Hallaks are liable for negligent misrepresentation under the general rule that " '. . . the owner of real estate, in the absence of facts to the contrary, is presumed to know the boundaries and area of his land, and a buyer is warranted in relying upon his representations in respect to such facts.' [Citations.]" (*Nathanson* v. *Murphy* (1955) 132 Cal.App.2d 363, 369 [282 P.2d 174].) Quality cites *Sixta* v. *Ochsner* (1960) 187 Cal.App.2d 485, 490 [9 Cal.Rptr. 617], for the proposition that a property owner has a duty to inform himself or herself of the true boundaries of his or her property before making a representation regarding the location of the property. (See also *Salomons* v. *Lumsden* (1949) 95 Cal.App.2d Supp. 924, 929-930 [213 P.2d 132]; *De Bairos* v. *Barlin* (1920) 46 Cal.App. 665, 670-671 [190 P. 188].)

In *Marvin* v. *Adams* (1990) 224 Cal.App.3d 956 [274 Cal.Rptr. 308] we pointed out that the presumption a landowner knows the falsity of misstatements of boundaries applies *in the absence of other facts*. The defendant seller of real property in *Marvin* misstated the total acreage of the property, the number of acres of orchards, and the quantity of marketable timber on the property based on an erroneous report prepared by a professional appraiser. Since there was no evidence the seller had any reason to doubt the accuracy of the appraisal report, we concluded the trial court properly granted nonsuit on the plaintiff buyer's fraud count because the plaintiff could not establish the scienter element of a fraud cause of action. That is, he could produce no evidence the seller knew his representations were inaccurate or lacked reasonable grounds for believing them to be true. (*Id.* at pp. 962-963.) Thus, a landowner may rebut the presumption he knew the boundaries and area of his or her land by showing that his or her erroneous belief in that regard was reasonable under the facts and circumstances.

Likewise, whether a landowner breaches the duty to be informed of the true boundaries of his or her property is a question of fact, the resolution of which must depend on the facts and circumstances of the case. We are aware of no authority imposing strict liability for innocent misrepresentations by landowners as to the location and area of property for sale, or requiring landowners to obtain surveys of their property before making such representations. If a landowner has an objectively reasonable basis for an inaccurate belief as to the location of boundaries or area, the landowner has not breached the duty to be informed regarding such matters.

In short, the trial court properly viewed the question of whether the Hallaks made the subject misrepresentation without reasonable grounds for believing it to be true as a question of fact. In its statement of decision the court concluded: "the evidence presented at trial shows that Hallak did have a reasonable ground for believing the boundary line was located as represented. It is clear from the evidence that all parties had the reasonable belief that the boundary line was located at or near where it was represented by Hallak. It was also clear that the subject car wash had been used for many years prior to Hallak's [sic] purchase with the same reasonable belief."

These findings are supported by substantial evidence. Harvey Allan testified the prior lessor of the car wash property represented to him in 1961 that the boundaries of the leasehold were as he (Allan) represented to Quality, and the car wash operated in that area from 1961 until the dispute giving rise to this action arose.[4] In addition, the incorrect property line pointed out to Quality was marked by stakes and a line painted on the ground.

Again, the Hallaks contend (for the first time on appeal) there was no encroachment and therefore no negligent misrepresentation. Had the court concluded there was no encroachment, it presumably would have denied Quality relief for negligent misrepresentation on the ground there was no misrepresentation. However, the court did not deny Quality recovery on that ground, but on the ground the Hallaks made the representations regarding the boundary line with a reasonable belief the boundary was as represented. Implicit in the finding of reasonable belief is the finding there was a misrepresentation and, accordingly, encroachment. The court's implied finding of misrepresentation is amply supported by the evidence.

The court did not misapply the law regarding negligent misrepresentation.

---

[4]Allan testified the car wash used that area since 1961, although the parties stipulated that "Mr. and Mrs. Allan were the original developers/builders of the car wash in 1962."

## III.

*Admission of Trial Exhibit 27*

■ Quality contends the court erred in admitting into evidence trial exhibit 27, a photocopy of the Hallak note in its original form. The Hallaks' counsel requested admission of exhibit 27 during closing argument. Quality objected based on lack of authentication and the best evidence rule. The court took the matter under submission and ruled in its statement of decision that exhibit 27 was admitted into evidence. Further, the court found "there was sufficient evidence presented in trial with regard to the existence of the [Hallak] note as well as its terms." We need not decide whether the court erred in admitting exhibit 27, as sufficient evidence to support the judgment on the Hallak note was admitted without objection before exhibit 27 was introduced.

The evidence admitted at trial, including the parties' stipulated facts, the testimony of Quality's representative Larry Schaadt and the escrow instructions evidencing the overall purchase agreement between Quality and the Hallaks, established the execution and terms of the Hallak note. Specifically, the evidence showed Quality signed and delivered to the Hallaks a promissory note in the principal amount of $132,186.28, and an amendment was later typed on the back of the original note lowering the principal amount to $121,986.95. Schaadt himself testified as to these facts. The payment terms and interest rate of the Hallak note were set forth in the escrow instructions, which were introduced at trial by Quality. The testimony of both Schaadt and Mr. Hallak confirmed the amount of Quality's monthly installment payment under the note was $2,250, as set forth in the escrow instructions.

■ "Where . . . no objection is made to the admission of secondary evidence for the purpose of proving the terms of [an] agreement, there is no error in the trial court's consideration of such evidence. [Citations.]" (*Sublett v. Henry's etc. Lunch* (1942) 21 Cal.2d 273, 276 [131 P.2d 369].) "[S]econdary evidence violating the best evidence rule, admitted without objection, is sufficient to sustain a judgment. [Citations.]" (*Greenfield v. Insurance Inc.* (1971) 19 Cal.App.3d 803, 811 [97 Cal.Rptr. 164].)

■ Before the Hallaks moved to admit exhibit 27, sufficient secondary evidence of the Hallak note to support the judgment on the note was either introduced by Quality or admitted without objection. Exhibit 27 was merely cumulative secondary evidence of the terms of the note before it was modified by the parties. As such, it added nothing to the secondary evidence

concerning the note already before the court. Therefore, assuming arguendo the court erred in admitting exhibit 27, the error was harmless.[5]

## IV.

### Denial of Relief to Quality Under the Allan Note

Quality contends the court erred by failing to offset the judgment against it in the entire amount of the Allan note or, at least, by denying Quality contribution from the Hallaks as joint and several co-obligors under the Allan note. The Allan note was amended on December 23, 1985, to provide that the Hallaks and various other entities, along with Quality, were obligated to pay the note. Prior to trial, Quality settled with the Allans, paying off the principal amount of the Allan note and taking an assignment of the note from the Allans.

The court in its statement of decision addressed the Allan note as follows:

"1. The Court finds that there was a valid assignment of the '[Allan] note' to Quality pursuant to the settlement reached between Quality and the [Allans]. The Court finds that Quality was a holder in due course of the '[Allan] note.'

"2. The Court also finds that the [Hallaks] at all time remained liable under the [Allan] note, pursuant to the agreement among the parties. However, the Court finds that pursuant to the agreement at the time of the sale, Quality was the primary party liable under the note. The Hallaks remained jointly and severally liable to the [Allans] to the extent that Quality defaulted on the note. Pursuant to the doctrine of indemnity and equity, the Court finds that Quality owes a duty to indemnify [Hallak] for the note in its entirety. The Court expressly finds that Quality [assumed] primary liability of the [Allan] note pursuant to the sales documents. Therefore, recovery is denied to Quality pursuant to the [Allan] note."

---

[5]At oral argument, counsel for Quality contended for the first time that the judgment in favor of the Hallaks on the Hallak note should have been entered against Quality Wash Group, Ltd., only, and not against Schaadt and Classic Car Wash because Schaadt and Classic were not obligated under the Hallak note. We deem this issue waived because it was not raised in Quality's opening or reply brief. (*Tan* v. *California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811 [189 Cal.Rptr. 775].) In any event, we note there is substantial evidence in the record supporting the court's finding against Schaadt and Classic on the Hallak note. The parties stipulated that "[a]s an additional part of the purchase price, San Diego Oil Co., Quality, Schaadt, and Classic signed and delivered a promissory note, (the 'Hallak Note') to Mr. and Mrs. Hallak." Regarding the amendment of the Hallak note, Schaadt testified only that a paragraph was typed on the back of the original note reducing the principal balance from $132,186.28 to approximately $121,000. He made no mention of an amendment relieving him or Classic of liability under the note.

We first address the effect of Quality's payment and taking of the Allan note by assignment. Civil Code section 1473 provides, "Full performance of an obligation, by the party whose duty it is to perform it, or by any person on his behalf, and with his assent, if accepted by the creditor, extinguishes it." Civil Code section 1474 provides, "Performance of an obligation, by one of several persons who are jointly liable under it, extinguishes the liability of all." It was undisputed that *Quality's* liability under the Allan note was primary. Thus, contrary to the court's finding that Quality was a holder in due course of the Allan note, Quality's payment of the note extinguished the liability of any other co-obligor under the note, rendering the note *functus officio* (of no further effect). Consequently, no action could be maintained on the note itself. (See *Bailes* v. *Keck* (1927) 200 Cal. 697, 700-701 [254 P. 573, 51 A.L.R. 930]; *Harris* v. *King* (1931) 113 Cal.App. 357, 362-363 [298 P. 100].)[6] Quality's remedy, if any, against the Hallaks as co-obligors with joint and several liability would not be an action on the note but rather one for contribution. (Civ. Code, § 1432; *Bailes* v. *Keck, supra,* 200 Cal. at pp. 701-702.)

While the court may have inaccurately characterized Quality as a holder in due course of the Allan note, it did not err in finding the Hallaks' liability under the note was secondary to Quality's. In concluding Quality was primarily liable under the Allan note and the Hallaks were only liable to the extent Quality defaulted, the court essentially found the Hallaks signed the amended Allan note as sureties or guarantors of Quality's primary obligation to pay the note. Civil Code section 2787 provides, in pertinent part, "The distinction between sureties and guarantors is hereby abolished. The terms and their derivatives, wherever used in this code or in any other statute or law of this state now in force or hereinafter enacted, shall have the same meaning as defined in this section. *A surety or guarantor is one who promises to answer for the debt, default or miscarriage of another . . . .*" (Italics added.)

■ Although there is a presumption that one who signs a promissory note with others is liable thereunder as a comaker rather than a surety (*Holtman* v. *Ledford* (1959) 170 Cal.App.2d 481, 483 [339 P.2d 150]), Civil Code section 2832 provides: "One who appears to be a principal, whether by the terms of a written instrument or otherwise, may show that he is in fact a

---

[6]More recent authority supports the proposition that a guarantor of a note, whose joint liability under the note is secondary, can pay the note and still maintain an action on the note itself against the party primarily liable for its payment. (See *Flojo Internat., Inc.* v. *Lassleben* (1992) 4 Cal.App.4th 713, 720-721 [6 Cal.Rptr.2d 99]; Cal. U. Com. Code, § 3419, subd. (e).) However, this authority does not support the proposition that a *primary* obligor under a note has the right to pay off the note and then bring an action on it against a comaker who shares primary liability.

surety, except as against persons who have acted on the faith of his apparent character of principal. It is not necessary for him to show that the creditor accepted him as surety." Thus, "[p]arol evidence is admissible by the maker of an instrument who appears by its terms to be a principal, to show that he is in fact a surety, except as against persons who have acted on the faith of his apparent character as principal." (*Beverly Hills Nat. Bank* v. *Glynn* (1968) 267 Cal.App.2d 859, 868 [73 Cal.Rptr. 808].)

Accordingly, while the Hallaks may not have been able to assert surety status against the Allans, who presumably acted on the faith of the Hallaks' apparent status as principal obligors under the Allan note, under Civil Code section 2832 they were entitled to assert surety status as against Quality, which clearly did not act on the faith of their apparent character of principal. The court's implied finding that the Hallaks signed the Allan note as guarantors of Quality's principal obligation to pay the note is substantially supported by the evidence, including the sales documents and the parties' stipulated facts and testimony showing Quality assumed the Allan note as part of the purchase price of the car wash. As guarantors of Quality's obligation to pay the Allan note, the Hallaks were exonerated by Quality's satisfaction of that obligation. (Civ. Code, § 2839.) Correspondingly, as principal obligor under the note, Quality has no right to seek reimbursement or contribution from the Hallaks as guarantors.[7]

Moreover, as guarantors of the note, the Hallaks fall within the definition of "accommodation party" under California Uniform Commercial Code section 3419, subdivision (a), which provides: "If an instrument is issued for value given for the benefit of a party to the instrument ('accommodated party') and another party to the instrument ('accommodation party') signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party 'for accommodation.' "

---

[7]Quality's reliance on *Woolley* v. *Seijo* (1964) 224 Cal.App.2d 615 [36 Cal.Rptr. 762] as authority for a co-obligor's right to pay the debt and take an assignment for the purpose of pursuing contribution from co-obligors is misplaced. *Woolley* involves payment of a judgment by one of several joint judgment debtors, and that judgment debtor's now codified right to compel contribution from the other judgment debtors. (See Code Civ. Proc., §§ 881-883.) Quality did not pay a judgment but rather paid the Allan note in settlement of the Allan's action on the note prior to judgment. Even if Quality had paid a judgment in favor of the Allans on their note, as primary obligor Quality would have no right of contribution from any co-obligors like the Hallaks who were secondarily liable under the note as sureties. A surety who satisfies all or part of a judgment against both the surety and the principal has the right to compel repayment from the principal under Code of Civil Procedure section 882, subdivision (b). At the risk of stating the obvious, however, a principal primarily liable to pay a debt has no reciprocal right to compel repayment from his or her surety, as the surety's liability is only to the creditor in the event the principal defaults.

Having assumed the Allan note as part of the purchase price of the car wash, Quality was the direct beneficiary of the value given for the note and, therefore, was the "accommodated party" under California Uniform Commercial Code section 3419.

California Uniform Commercial Code section 3419, subdivision (e) provides: "An accommodation party who pays the instrument is entitled to reimbursement from the accommodated party and is entitled to enforce the instrument against the accommodated party. *An accommodated party who pays the instrument has no right of recourse against, and is not entitled to contribution from, an accommodation party.*" (Italics added.) Accordingly, as an accommodated party to the Allan note who paid the note, Quality has no right of recourse against, and is not entitled to contribution from the Hallaks, who are accommodation parties under the note.

The court did not err in denying Quality recovery against the Hallaks on the Allan note.

### DISPOSITION

The portion of the judgment denying Quality's claim for breach of contract is reversed. The judgment is otherwise affirmed. The parties are to bear their own costs on appeal.

Nares, Acting P. J., and Haller, J., concurred.